A89A0083. ROLLER-ICE, INC. et al. v. SKATING CLUBS OF GEORGIA, INC.
(384 SE2d 235)

McMURRAY, Presiding Judge.

Roller-Ice, Inc. ("Roller-Ice") brought an action against Skating Clubs of Georgia, Inc. ("Skating Clubs") to recover damages allegedly resulting from misrepresentations by Skating Clubs' agent which were made to induce Roller-Ice to purchase a roller-skating business. Skating Clubs denied the material allegations of the complaint and filed a motion for summary judgment.

During the summer of 1984, Gilbert Vuillemin, a corporate officer of Roller-Ice, began negotiating with Albert Couey, the president of Skating Clubs, to purchase a roller-skating business ("Sparkles") that was owned by Skating Clubs. Couey furnished Vuillemin with a "Profit and Loss Statement" which purportedly reflected the monthly income and expenses of Sparkles from February 1982 through the first half of September, 1984. Relying on this report, Roller-Ice executed a lease agreement for the land, equipment and building which comprised Sparkles and a contract for the option to later purchase the business. The option contract provided, in pertinent part, as follows: "It is understood and agreed by the Buyer that the Seller has made no warranties or representations as to the value of the business known and operated as 'Sparkles,' or the value of the property, the buildings thereon, other improvements, or the inventory of equipment and fixtures, and the Buyer acknowledges that it has made its own independent investigation into the economics of the transaction and the [value] of the business, and the Buyer specifically disclaims any reliance upon any statements made by Seller, financial statements, profit and loss statements, or other statements which may have been furnished to Buyer by Seller as such was primarily for overall form and content rather than the accuracy of any particular figures thereon, said statements having been originally prepared by Seller for internal management and control purposes only."

"[A]round the 20th of September, 1984," Roller-Ice began operating "Sparkles" and "in the second part of December or in the first part of January [1985,]" daily income report sheets were found in "the office space at 'Sparkles'" which reflected income for the busi-

ness "from May through September of 1982" that was substantially less than the income reported to Vuillemin by Couey in the "Profit and Loss Statement." Vuillemin contacted Couey in an attempt to either renegotiate the lease and option contracts or to obtain a refund of monies paid by Roller-Ice to Skating Clubs for the contracts. Couey refused to compromise the contracts and Roller-Ice refused to make further payments to Skating Clubs under the terms of the agreements. As a result, Skating Clubs took possession of Sparkles. From this and other undisputed evidence, the trial court entered summary judgment in favor of Skating Clubs. Roller-Ice appeals. *Held*:

"Our Code provides that '(f)raud renders contracts voidable at the election of the injured party.' OCGA § 13-5-5. And, '(p)arol evidence shall be admissible to show that a writing either was originally void or subsequently became so.' OCGA § 24-6-8. Further, '(f)raud, accompanied by damage to the party defrauded, always gives a right of action to the injured party.' OCGA § 51-6-1. 'Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. . . . In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood. . . .' OCGA § 51-6-2." *del Mazo v. Sanchez*, 186 Ga. App. 120, 124 (366 SE2d 333).

The evidence in the case sub judice, showing that Couey overstated the income of Skating Clubs' business and that Roller-Ice relied on this information in negotiating the purchase of Sparkles, was sufficient to raise a genuine issue of material fact as to fraud. Nonetheless, Skating Clubs argues that the disclaimer clause in the option contract forecloses Roller-Ice from pressing its claim for fraud and deceit based on the income figures reflected in the "Profit and Loss Statement."

" 'Where the purchaser of personal property has been injured by the false and fraudulent representations of the seller as to the subject matter thereof, he ordinarily has an election whether to rescind the contract, return the article, and sue in tort for fraud and deceit, or whether to affirm the contract, retain the article, and seek damages resulting from the fraudulent misrepresentation.' *Nichols v. Williams Pontiac, Inc.*, 95 Ga. App. 752 (98 SE2d 659)." *City Dodge v. Gardner*, 130 Ga. App. 502, 503 (1) (203 SE2d 729). " 'However, depending upon which of the two actions is ultimately pursued, the presence of a merger [or disclaimer] clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger [or disclaimer] clause will pre-

vent his recovery. (Cit.) If, on the other hand, he does rescind the contract, the merger [or disclaimer] clause will not prevent his recovery under a tort theory. . . .' [*Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886-887 (354 SE2d 210)]." *del Mazo v. Sanchez*, 186 Ga. App. 120, 127, supra. It is from this perspective that Roller-Ice argues that a genuine issue of material fact remains as to whether it rescinded the lease and option contracts.

"A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." OCGA § 13-4-60.

In the case sub judice, Vuillemin testified that, after discovering the income records which reflected substantially lower monthly income figures than those provided by Couey, he contacted Skating Clubs and "offered Mr. Couey to renegotiate the contract and offered him if he didn't want to do anything to just refund [Roller-Ice] because we were cheated." Vuillemin reinforced this testimony in an affidavit, wherein he deposed that he "brought [the income] discrepancies to the attention of Mr. Couey and asked him to either (1) Refund the $150,000.00 [Roller-Ice initially paid to Skating Clubs for the lease and option contracts] and declare the contracts between Roller-Ice, Inc., and Skating Clubs of Georgia, Inc., null and void, thus returning everyone to the *status quo* as it existed prior to the execution of the contracts; or (2) renegotiate the contracts to reflect the true financial figures."

"Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract." *Gibson v. Alford*, 161 Ga. 672, 673 (5) (132 SE 442).

In the case sub judice, Roller-Ice's offer to renegotiate the contracts with Skating Clubs amounted to an affirmative recognition of the contracts, thereby cutting off Roller-Ice's option to avoid or rescind the lease and option contracts. See *Gibson v. Alford*, 161 Ga. 672, 686, supra, and *Thompson v. Growers Fin. Corp.*, 49 Ga. App. 119 (1) (174 SE 192). Consequently, having made its election, Roller-Ice is bound by the merger or disclaimer clause in the option contract and cannot allege reliance on the "Profit and Loss Statement" pro-

vided by Skating Clubs prior to the execution of the contract. See *Condios, Inc. v. Driver*, 145 Ga. App. 537 (1) (244 SE2d 85). Compare *Alpha Kappa Psi Bldg. Corp. v. Kennedy*, 90 Ga. App. 587 (83 SE2d 580), where the purchaser could have discovered the purported fraud by diligence before the execution of the sales contract. It follows that the trial court did not err in granting summary judgment in favor of Skating Clubs.

*Judgment affirmed. Carley, C. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment but not for the reason advanced, which is based on the record having conclusively shown as fact that the allegedly defrauded party affirmed the contract. It is true that if that were the case, plaintiff-buyer would be relegated to a suit for breach of contract, the contract disclaimer would control, and no damages would be recoverable.

However, a question of fact is presented as to whether the buyer by its actions or inactions affirmed the contract. There is evidence that upon discovery of the significant discrepancy, buyer promptly contacted seller and, before electing either option, offered to renegotiate (which could be a rescission of the original contract) or rescind the original contract outright, return the property, and recover the option money. There is also evidence that after the buyer made this initial offer and while awaiting seller's response, the seller ostensibly wrested the decision from buyer by taking possession of the property.

Thus the evidence did not show as a matter of law that buyer affirmed the contract and retained the property, which would have relegated it to a suit for breach of contract and preclusion from damages because of the disclaimer clause.

The suit sounds in tort, and the trial court found it to be such, concluding that the allegedly defrauding seller was entitled to summary judgment because it showed conclusively by the disclaimer clause that buyer's reliance on the profit and loss statements provided by seller was not justified. The affirmative absence of the fourth element of fraud, see OCGA § 51-6-2 and *City Dodge v. Gardner*, 232 Ga. 766, 769, fn. 1 (208 SE2d 794) (1974), is fatal for this reason.

DECIDED JULY 5, 1989.

W. Roland Campbell, for appellants.
W. Allen Separk, Adele Grubbs, for appellee.