A92A1757. GREAT AMERICAN BUILDERS, INC.
v. HOWARD et al.
(427 SE2d 588)

BEASLEY, Judge.

Al and Pamela Howard, Kenneth and Linda Samer, Catherine Asinc, Elizabeth Coffe, Richard and Virginia Estridge, and David Penn sued Great American Builders, Inc., seeking damages for breach of contract, fraud and deceit, and violation of the Fair Business Practices Act (FBPA). OCGA § 10-1-390 et seq. We granted Great American's application for interlocutory appeal of the trial court's denial of its motion for summary judgment. For reasons which follow, we re-

verse.

Plaintiffs bought homes and "lakefront" lots in a residential subdivision in Richmond Hill, Georgia. As a licensed real estate broker, Great American, through its sales agent Carol Ann Coleman and others, sold the lots to plaintiffs. Great American was also the builder of the homes. On each lot, it agreed to construct a particular model home selected by the purchasers from options supplied by Great American.

Under special stipulations to their contracts, closed in 1986, Coffe, Asinc, the Samers, and Dale Anderson (predecessor to Penn) selected an option to purchase a "lakefront" lot for $5,000. The Estridges did the same for $6,000. Neither the sales contracts nor the stipulations defined the term "lakefront." The Howards maintain that they also selected an option to purchase a lakefront lot for $5,000, but they have not produced any written, contractual stipulation so providing. Penn purchased Dale Anderson's lot and home in 1989.

At the closings, all purchasers received settlement statements, a survey of the lot and home purchased, a warranty deed, and assorted closing documents. Neither the surveys nor the warranty deeds made reference to the lake or to plaintiffs' rights concerning their use of it. The surveys showed that a strip of land between the lots and the area of the lake belonged to either Charles Stafford or the Richmond Management Company (the corporation through which he does business), from whom Great American bought the property which it sold to plaintiffs. Survey markers on the property likewise showed that there was a strip of land approximately 18′ to 25′ wide between the boundaries of their lots and the lake.

Those plaintiffs who had direct dealings with Great American testified that prior to executing the sales contracts, they inquired as to the meaning of the phrase "lakefront" lot and were told by Great American that their lots adjoined and fronted on a lake within the subdivision, and that even though the lake was not owned by Great American, it had a permanent easement and license agreement with the lake owner and plaintiffs would have permanent and uninterrupted use of the lake for all recreational purposes and could even build docks into the lake from their lots. Some plaintiffs testified that Great American told them they would receive letters of easement.

Each of the sales contracts contained an "ENTIRE AGREEMENT" clause stating, "This contract constitutes the entire agreement between the parties, and shall be binding upon and inure to the benefit of heirs, executors, administrators and assigns of the respective parties hereto. ALL additions or modifications to this contract shall be only in writing and signed by ALL parties and shall become an addendum to this contract. There shall be no verbal agreements of

any kind between parties." Each of the contracts also contained an "ADVICE AND REPRESENTATION WAIVER" under which the purchasers acknowledged that they had not relied upon the advice or representations by the broker or its agents as to certain matters not relevant here.

At the closing of their contract in August 1986, the Samers insisted that they receive some documentation as to their right to access and use the lake. A document was executed by the Samers and Stafford in October 1986 under which Stafford, on behalf of Richmond Management Company, gave them a license to cross the strip of land lying between their lot and Stafford's lake, as well as a license to utilize the lake for non-commercial purposes, subject to the condition that the licensor had the right to revoke or modify this license at will. At various times in 1987, identical licensing agreements were executed between Stafford on behalf of Richmond Management and the Howards, Estridges, Coffes, and Dale Anderson.

On February 24, 1989, Stafford wrote a letter to various plaintiffs and Great American, stating that he would like to provide the property owners with the opportunity to purchase the land between their property line and 50′ into the lake at a proposed sales price of $3,000 per parcel, with the offer being valid for only 15 days and conditioned upon acceptance by all property owners.

On February 28, Great American responded with a letter stating that "[w]hen we purchased the lake front lots you told us to tell our purchaser that they had full use of the lake and could even build a dock but that you wanted to retain ownership because you were unsure of your plans for the land on the northern and eastern bank. We have since sold most of the lots based on your statement and feel that we were right in doing so. In view of this we are not interested in your offer of February 24."

On March 6, plaintiffs sent a letter to Great American stating that they had been assured by Coleman that the additional monies paid by them for lakefront lots would insure them of the right to access and use the lake, and if their license was revoked they intended to recover such monies from Great American.

On March 13, Great American responded with a letter expressing an interest in seeing documentation of their right to access and use the lake since Stafford and Richmond Management had only given defendant a verbal commitment. The letter ended with the statement to "[p]lease be assured that we will do all we can to insure you a lake front lot and will be willing to join with you in any action you deem necessary."

On March 30, plaintiffs responded with a letter stating that Great American had extracted $5,000 or $6,000 from each purchaser based upon only a "verbal commitment" from Stafford, and since

Great American had stated that it would do all it could to insure them a lakefront lot, it should accept and pay Stafford's offer or reimburse the property owners for their loss.

Neither Great American nor the plaintiffs elected to accept the offer, and on April 3, Stafford wrote a letter to various plaintiffs terminating any license or permission to use any portion of the land between their lots and the lake and stating that any portions of the land not sold would be posted, and fences and a vegetation screen would be planted. Plaintiffs' subsequent letters to Great American were unanswered.

In 1990, plaintiffs purchased from Stafford title to respective lots extensions with easement rights, with each plaintiff paying $3,500 except Estridge, who paid $1,750. Thereafter, plaintiffs sued Great American, which moved for summary judgment as to all claims and all plaintiffs, upon grounds of lack of contractual privity, plaintiffs' failure to exercise proper diligence to ascertain the facts, Statute of Frauds, estoppel, the doctrine of merger, and the statute of limitation.

In denying Great American's motion as to plaintiffs' claims, the trial court ruled as follows: whether the verbal agreement alleged by plaintiffs can be enforced as an exception to the parol evidence rule and doctrine of merger in cases involving a separate and distinct collateral agreement is a jury question; in any event, parol evidence is admissible to show the true consideration for a deed; although there was no direct contractual relationship between Great American and Penn, he succeeds to Anderson's rights; whether the Howards contracted with Great American for a lakefront lot is a jury question; whether plaintiffs were justified in reliance on misrepresentations allegedly made by Great American is a jury question; and whether plaintiffs' FBPA claim is barred by the applicable statute of limitation is also a jury question.

1. The court erred in denying Great American's motion for summary judgment as to fraud, in that such claim is barred by the "entire agreement" clause.

Notwithstanding variations in the language employed in a "merger" or "entire agreement" clause, it has been generally held that where a contract contains such a clause, and the plaintiff claiming fraud in the inducement elects to affirm the contract and sue for damages rather than rescind, the plaintiff is precluded from making any assertion that he relied upon verbal misrepresentations, unless he can show that as a result of such misrepresentations he did not acquire knowledge of the contents of the contract. *Roller-Ice v. Skating Clubs of Ga.*, 192 Ga. App. 140, 141 (384 SE2d 235) (1989); *Jain v. Carload Delivery Svc.*, 189 Ga. App. 95, 96 (375 SE2d 99) (1988); *Del Mazo v. Sanchez*, 186 Ga. App. 120, 124 (366 SE2d 333) (1988). Plaintiffs do

not allege that there were such misrepresentations here. Those alleged do not support a claim of fraud. Compare *Brakebill v. Hicks*, 259 Ga. 849 (388 SE2d 695) (1990) and *Hardage v. Lewis*, 199 Ga. App. 632 (405 SE2d 732) (1991), with *Insilco Corp. v. First Nat. Bank of Dalton*, 156 Ga. App. 382, 384 (2) (274 SE2d 767) (1980) and *Blanchard v. West*, 115 Ga. App. 814, 815 (2) (156 SE2d 164) (1967).

2. Plaintiffs' contract claim is also barred by the "entire agreement" clause.

The claim is predicated on allegations that Great American orally assured plaintiffs that they had or would be provided with permanent easements to access and use the lake. The "entire agreement" clause states that "[t]here shall be no verbal agreements of any kind between the parties." The plain language of this provision bars the verbal agreement sought to be enforced. See *Curtis v. Pierce*, 157 Ga. 717 (122 SE 208) (1924); compare *Langenback v. Mays*, 205 Ga. 706 (54 SE2d 401, 11 ALR2d 1221) (1949); see generally 11 EGL, Evidence (Civil), § 71 (1992 Rev.). See also *Worthey v. Holmes*, 249 Ga. 104, 105 (1) (287 SE2d 9) (1982); *Sullivan v. Cheshire*, 190 Ga. App. 763, 764 (1) (380 SE2d 294) (1989) (as to whether provisions in real estate sales contracts and building construction agreements merge into warranty and security deeds under the doctrine of merger).

Apart from an "entire agreement" or "merger" clause is the rule that "[p]arol contemporaneous evidence is *generally* inadmissible to contradict or vary the terms of a valid written instrument." (Emphasis supplied.) OCGA § 24-6-1. An exception is a separate and distinct, collateral oral agreement that is consistent with and forms part of the consideration or inducement for a written agreement. *Diamondhead Corp. v. Robinson*, 144 Ga. App. 60, 61 (2) (240 SE2d 572) (1977). However, the provision in the parties' contracts that there shall be no verbal agreements of any kind between the parties is absolute. As such, it bars the enforcement of a prior verbal agreement that, in fulfillment of its written contractual obligation to convey "lakefront" lots to the plaintiffs, Great American would provide plaintiffs with a permanent easement ensuring their littoral rights. See *Curtis v. Pierce*, supra.

3. Plaintiffs' FBPA claim is not barred by the "entire agreement" clause, the parol evidence rule, or the doctrine of merger.

The question presented concerns the FBPA's statute of limitation, which provides that "[n]o action shall be brought . . . [m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation. . . ." OCGA § 10-1-401 (a) (1). The plaintiffs or their privies knew or should have known any FBPA violation by at least 1987, by which time documentation that Great American had not been granted a permanent easement was provided to all concerned. Nor had they been granted such

easements. Plaintiffs filed the present complaint in 1990, too late under the two-year statute of limitation.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 4, 1993.

*Weiner, Shearouse, Weitz, Greenberg & Shawe, N. Harvey Weitz, Jeffrey W. Rubnitz*, for appellant.
*Michael H. Graham*, for appellees.