A96A0269. McNATT et al. v. COLONIAL PACIFIC LEASING CORPORATION et al.

(472 SE2d 435)

Judge Harold R. Banke.

Linda and William McNatt, the sole shareholders of Quick-Trip Printers, Inc. (collectively "McNatt") sued Itex Systems Southeast, Inc. ("Itex"), Burnham Leasing Company, Inc. ("Burnham"), Datronic Rental Corporation, independently and as general partner of Datronic Equipment Income Fund XVII, L.P. ("Datronic"), Colonial Pacific Leasing Corporation ("Colonial"), Terry Demarest, Scott Vines, Drew Alston,[1] Automated Laser Personalization System, Inc., and Laser Systems, Inc., seeking to revoke the acceptance of an allegedly defective printing system, to rescind two leases, and alleging negligent release of funds by Colonial and Datronic to Itex. Datronic and Colonial counterclaimed for breach of the leases and moved for summary judgment on their counterclaims and McNatt's claims. The trial court entered an order against McNatt in favor of Datronic and Colonial on their counterclaims and on the issue of negligent release of funds. McNatt appeals the trial court's grant of summary judgment to Colonial and Datronic on both the main action and the counterclaims.

To prevail at summary judgment under OCGA § 9-11-56, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-movant, warrant summary judgment as a matter of law. OCGA § 9-11-56 (c). *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the evidence presented was as follows: On June 10, 1991, Linda McNatt, as president of Quick-Trip, signed two leases with Burnham for an Itex Page II System. On behalf of Burham, Dianne Grissom signed the leasing documents on June 12, 1991. The Itex Page II System is a complex computer printing system consisting of hardware, software, and other components and is a computerized foil printer and laser tone printer all in one unit. On June 10, 1991, Linda McNatt purportedly signed a personal guaranty for each lease. Before Quick-Trip received the Itex Page II System, Burnham assigned one lease having a 60-month term to Colonial on June 12, 1991. Pursuant to the terms of that lease, Quick-Trip agreed to make 60 payments of $898.65 and paid $3,399

---

[1] Demarest, Vines, and Alston were all affiliated with Itex.

as a security deposit and $898.65 as an advance payment. The other lease, having a 48-month term, Burnham assigned to Datronic on June 13, 1991. This lease required Quick-Trip to pay 48 payments of $741.73 and Quick-Trip paid $1,483.46 in advance as the first and last payments.

None of the components of the Itex printing system were delivered until June 14, and both William McNatt and Linda McNatt testified the system never worked properly and had multiple problems. However, Linda McNatt signed an Acknowledgment and Acceptance of Equipment by Lessee (Quick-Trip) before any equipment was delivered and before Burnham executed either lease or assigned the leases.[2] The acceptance indicates that the equipment was "received in good condition and repair," and was "properly installed, tested, and inspected, and is operating satisfactorily in all respects for all of Lessee's intended uses and purposes." The McNatts testified that they were pressured by sales agents of Itex to sign the leases and other documents without reading them in order for Linda McNatt to be able to participate in a training session beginning on the same day as she signed the paperwork.

Whether the system ever functioned or functioned properly is disputed. McNatt claimed that they discovered that the machine was used, not new, and vastly inferior to what they had been led to expect by Itex and its agents. McNatt alleged that Alston, Demarest and Vines made material misrepresentations of the capabilities of the Itex system, which failed to produce saleable, marketable copy. Instead of a system capable of performing all their typesetting needs, McNatt alleged it could not even produce clean, commercial grade copy or perform the tasks as represented by the Itex sample book. William McNatt testified that on June 20 or 21 he advised Burnham not to release funds to Itex, the vendor, because the equipment was unsatisfactory and incomplete. Linda McNatt testified that in late June the system was not running correctly and was not even fully assembled until at least two weeks after the June 14 delivery of its components.

William McNatt testified that he received telephone calls from Colonial and Datronic inquiring as to whether the equipment was in place and working and whether funds should be released, and that he advised both companies that there were problems and cautioned them saying, "I sure wouldn't want you to give anyone any money." According to his testimony, he advised both assignees that they would be releasing the funds at their own risk. Colonial and

---

[2] For part of the system, Linda McNatt signed a separate certificate of acceptance acknowledging delivery and receipt.

Datronic, the assignees of the leases, nevertheless, released funds to Itex for the allegedly defective system on June 24, 1991.

Deeming the system defective and totally unacceptable for its business, Quick-Trip made no further payments to Burnham, Colonial or Datronic and a part of the leased equipment was retrieved on or about July 12, 1991.[3] In correspondence dated August 9, 1991, William McNatt described the major deficiencies of the equipment in detail and Quick-Trip's unsuccessful efforts to have the problems corrected. Ultimately, Colonial sold its portion of the system for $500 on October 14, 1992 and Datronic's portion was not sold but was scrapped on July 24, 1992.

Linda McNatt and Quick-Trip filed this action seeking revocation of acceptance, rescission of the leases, and compensatory and punitive damages for the allegedly negligent funding to Itex. Datronic and Colonial counterclaimed for breach of their respective leases. The trial court awarded $88,932.06 in favor of Datronic and Colonial with interest accruing from July 15, 1991, the date of default. *Held*:

1. McNatt contends that the trial court erroneously granted summary judgment on Datronic and Colonial's counterclaims on the breach of lease issue when it failed to first determine the merit of McNatt's rescission claim. We agree.

" 'A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.' OCGA § 13-4-60." *Potomac Leasing v. Thrasher*, 181 Ga. App. 883, 886 (2) (354 SE2d 210) (1987). In this case, as soon as the problems were discovered, the McNatts notified Itex, Burnham, Datronic, and Colonial that there were problems with the printing system and, in fact, a part of the system was retrieved about a month after the first components were delivered. The evidence shows that McNatt took prompt action to rescind, never took action to affirm after it discovered the system was defective, and did not make a single payment under either lease. *Thrasher*, 181 Ga. App. at 886 (2).

We reject both Datronic and Colonial's efforts to use the merger clause and the disclaimer provisions in the leases to defeat McNatt's rescission claim. The contractual defense of fraud in the inducement by oral misrepresentation is the functional equivalent of a tort action for fraud and deceit and a merger clause cannot be used to defeat such a claim. *Thrasher*, 181 Ga. App. at 887. Moreover, "[a] stipula-

---

[3] The trial court determined the date of default as July 15, 1991.

tion in a contract that the provisions thereof constitute the sole and entire agreement between the parties and that no modification thereof shall be binding on either party unless in writing and signed by the seller can have no bearing in a case where fraud to induce the contract is the issue. [Cits.]" *Thrasher*, 181 Ga. App. at 887. See *City Dodge v. Gardner*, 232 Ga. 766 (208 SE2d 794) (1974) (merger clause does not bar action to rescind contract where rescission sought).

Colonial and Datronic further argue that it does not matter whether Itex and its employees were the "bad guys" or engaged in fraudulent conduct because Colonial and Datronic are insulated by the "hell and high water" provisions in the leasing documents. This is plainly incorrect because before any of the contract provisions can apply there must be a valid and enforceable contract. Whether McNatt was fraudulently induced by Itex's misrepresentations to contract with Burnham is a material issue of disputed fact, as is whether the contract was rescinded under OCGA § 13-4-60. See *Stricker v. Epstein*, 213 Ga. App. 226, 227-228 (1) (444 SE2d 91) (1994) (merger clause no bar to claim for fraud in the inducement). Compare *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296 (427 SE2d 789) (1993) (purchaser who affirmed contract which contained merger clause and disclaimer provisions and also retained purchased articles, was estopped from asserting that he relied upon seller's misrepresentations); and *Holcomb v. Commercial Credit Svcs. Corp.*, 180 Ga. App. 451, 452 (1) (349 SE2d 523) (1986) (UCC case controlled by OCGA § 11-2-316, where finance company insulated from fraud claim against vendor where no evidence of relationship shown between them); and *Carpenter v. Curtis*, 196 Ga. App. 234 (395 SE2d 653) (1990) (physical precedent only, Court of Appeals Rule 33 (a)) (affirmation of a contract precludes fraudulent misrepresentation claim). Accordingly, a jury must determine whether McNatt was defrauded and whether the leasing agreements were rescinded for fraud under OCGA § 13-4-60.

2. McNatt contends that the trial court erroneously granted summary judgment to Datronic and Colonial on McNatt's negligent release of funds claim.

The evidence presented by Colonial and Datronic on this issue was conflicting and disputed. To refute McNatt's negligent release of funds claim, Colonial and Datronic offered the Acknowledgment and Acceptance of Equipment by Lessee document, Barbara Varnes' affidavit testimony that Linda McNatt told her the system was operating satisfactorily, and a portion of a letter to Itex from William McNatt appearing to conditionally authorize the release of funds to Itex. Barbara Varnes, a lease processor of Colonial, testified that Linda McNatt informed her that the system was installed and operating satisfactorily as of June 21, and that relying on Linda McNatt's

verbal assurance, she approved the funding transaction.

McNatt offered testimony that Datronic and Colonial were warned about the problems with the system and cautioned not to release funds except at their own risk. Also, Linda McNatt disputes the existence of any conversation with Varnes of Colonial and testified that she had no recollection of ever speaking with anyone from Colonial. Because material issues of fact are disputed, Datronic and Colonial were not entitled to summary judgment on the negligent release of funds count. OCGA § 9-11-56 (c).

3. McNatt claims that the trial court erroneously granted summary judgment on Colonial's counterclaim against Linda McNatt as personal guarantor of the Colonial lease because a material issue of fact remains unresolved as to whether she actually signed the equipment lease guarantee.[4] Linda McNatt testified that Itex representatives rushed her into signing documents and that she did, in fact, sign papers without reading them. Although she admitted signing the personal guarantee for the lease assigned to Datronic, she indicated that she was not certain the signature on the Colonial personal guarantee was hers and she testified that she lacked any independent recollection of signing that particular document. Linda McNatt's somewhat ambivalent, uncertain testimony is disputed by the affidavit of Ann Roesinger, a contract employee of Itex, who affirmatively swore that she witnessed Linda McNatt sign both guarantees. Although the evidence clearly weighs toward Colonial, it cannot be said to be undisputed, and Colonial was not entitled to summary judgment on this issue.

4. McNatt claims that the trial court erroneously granted summary judgment to Datronic and Colonial on the issue of failure of consideration because the printer was not new, was unusable from the date of its delivery, and the system was subsequently sold for a mere $500.

A written disclaimer of warranty clause in a contract does not foreclose the defenses of failure of consideration and fraud where the goods supplied are not what was specified in the contract. *Granite Equip. Leasing Corp. v. Folds*, 133 Ga. App. 856, 857 (212 SE2d 490) (1975) (contract required factory rebuilt printing press but reconditioned press provided, so disclaimer provision in contract inapplicable). Here, the disclaimer of warranty clause in the leases applied, if at all, only to the precise type of equipment specified in the contract. *Folds*, 133 Ga. App. at 857. Compare *Lightsey v. Nalley Equip. Leasing*, 209 Ga. App. 73, 74 (2) (432 SE2d 673) (1993) (lessee cannot

---

[4] It is undisputed that Linda McNatt signed the personal guarantee for the Datronic lease.

affirm lease, retain subject of lease, then finally, after repossession occurs, raise failure of consideration as defense where goods unconditionally accepted).

Here, McNatt disputes that it ever received what it had bargained for or accepted a lesser substitute. *Folds*, 133 Ga. App. at 857. Linda McNatt testified that the wrong software was supplied, Quick-Trip never received what it contracted for, and despite repeated efforts to get the system to function properly, the system was defective. William McNatt testified that there were several serial number discrepancies between the serial numbers on the leasing documents and the numbers appearing on various component parts. He testified that the equipment was not new, as promised, and instead was dirty, and looked used, and that he had reason to believe that some parts were from a system which had been repossessed. During oral argument, evidence was presented that John Rosenlund, who was in charge of picking up the equipment from Quick-Trip's premises, had stated in his affidavit that he could not conclusively identify the equipment as being the exact same equipment which appeared in the lease documents. We reverse because material disputed issues of fact remain as to whether a failure of consideration occurred.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MAY 9, 1996 —
RECONSIDERATION DENIED JUNE 19, 1996 — 

*Rumsey & Ramsey, Austin L. Ramsey III,* for appellants.
*Savell & Williams, William E. Turnipseed, Lamberth, Bonapfel, Cifelli, Willson & Silvis, Carter L. Stout, Bodker, Ramsey & Andrews, Stephen C. Andrews,* for appellees.