A97A0191. JONES v. CARTEE et al.
(489 SE2d 141)

SMITH, Judge.
Daniel Jones brought this action for breach of contract and fraud in the inducement against Mary Nell Cartee and Cartee Enterprises, Inc. d/b/a Meadow Lakes Golf Course. Jones sought to recover the

payment of $25,000 earnest money made pursuant to a purchase and sale agreement for the golf course owned by Cartee Enterprises, Inc. Following a bench trial, the court entered judgment in favor of defendants. We agree with the trial court's conclusion that Jones is not entitled to recover, and we affirm.

Mary Nell Cartee and James Cartee managed a golf course in Bulloch County owned by Cartee Enterprises. In September 1992, Jones and Andy Pittman began negotiating with the Cartees about buying the course. Pittman was the primary negotiator for the prospective purchasers. During the September negotiations, James Cartee provided Pittman with a two-page handwritten estimate of income and expenses of the golf course, which he had prepared at Pittman's request. Cartee testified that the estimate was not accurate and that he prepared it off "the top of my head." On behalf of Cartee Enterprises, Mary Nell Cartee subsequently executed a purchase and sale agreement with Jones and Pittman for the golf course on October 1, 1992. The purchase price was $1.4 million, with Jones's aunt, Virginia Stewart, providing the $25,000 earnest money required by the contract. After the contract was executed, Jones went on a month-long vacation. Stewart's accountant, McClain, examined the records of the golf course and discovered a large discrepancy between the income shown on the handwritten income and expense statement and that reflected by the business records of the golf course. According to McClain, the income reported on the records was less than half of the income reported on the estimate prepared by James Cartee. After learning of the material discrepancies, Jones filed this action seeking return of the $25,000 earnest money.

In his complaint, Jones claimed that the Cartees fraudulently induced him to enter the contract by making false representations concerning the income of the golf course and that he relied on these representations to his detriment by paying $25,000 in earnest money. He also alleged that the discrepancies between the income/expense statement provided by James Cartee and the actual business records constituted a breach of contract. Jones appears to have based the contract claim in large part on a provision of the contract providing that no seller representations, warranties, or written statements or securities contained untrue statements of material fact or omitted necessary statements. The trial court concluded that a merger clause in the contract prevented Jones from recovering on his breach of contract claim and that Jones's fraud claim failed both because he could not show justifiable reliance on Cartee's estimate and because he waived that claim. We agree with the trial court's conclusion that Jones is not entitled to recover, but for different reasons.

1. In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for breach;

or (2) rescind the contract and sue in tort for fraud. *Mitchell v. Head*, 195 Ga. App. 427, 428 (394 SE2d 114) (1990); *Potomac Leasing v. Thrasher*, 181 Ga. App. 883, 886 (2) (354 SE2d 210) (1987). "[D]epending upon which of the two actions is ultimately pursued, the presence of a merger clause in the underlying contract may be determinative as to the successful outcome. If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery. [Cit.] If, on the other hand, he does rescind the contract, the merger clause will not prevent his recovery under a tort theory." Id. at 886. The trial court concluded that Jones did not properly rescind the contract once he learned of the alleged incorrect income statement prepared by James Cartee and that he was precluded from recovery because of the merger clause. We do not reach the issue of whether recovery was permitted under the contract terms because the evidence shows that Jones *did* rescind the contract. [1]

The evidence presented shows that once Jones learned on November 6, 1992,[2] of the great discrepancy between James Cartee's estimate and the actual business records, he no longer wished to proceed with purchase of the golf course at the agreed-upon price. On and after that date, he agreed to purchase the golf course only if the price were reduced to $1.1 million. Pittman and McClain renegotiated with the Cartees on Jones's behalf on November 9 to reduce the purchase price, and the Cartees indeed agreed to lower that price to $1.1 million. Despite the fact that the purchase price was lowered, however, on November 24, Jones ultimately indicated via letter from his attorney to the Cartees' attorney that he did not wish to complete the purchase.

Although Jones claims that he indicated his desire to rescind the contract at the November 6 meeting, we must consider the evidence that renegotiations were undertaken on his behalf after that date. Those renegotiations, however, were not indicative of affirmance of the contract. This evidence instead demonstrated Jones's refusal to agree with the terms of the original contract once he learned of the material discrepancy between the information provided by James Cartee and the business records. He would agree to purchase the golf course only if the material term of price changed. In effect, Jones was

---

[1] It is true, as urged by appellees, that we are bound by a trial court's findings unless they are clearly erroneous or wholly unsupported by the evidence. *Sundance, Inc. v. Guy*, 174 Ga. App. 792, 793 (1) (331 SE2d 102) (1985). The trial court's conclusion that Jones did not rescind the contract, however, was not a finding of fact but was a conclusion of law.

[2] It appears that Jones may have learned from McClain that some discrepancies existed about November 3. But McClain informed Jones that he wished to review the records again, and on November 6, a meeting including Jones and McClain was held during which McClain confirmed the discrepancy.

attempting to extinguish the original contract.

Jones took action in response to his discovery of discrepancies in James Cartee's estimate, but once he learned of the discrepancies he never affirmed the original contract or took action under the contract to pursue the agreement as provided by its terms. Instead, he explicitly rejected the contract as written by insisting on a reduced purchase price. This behavior was not consistent with affirmance of the original contract. See *McNatt v. Colonial Pacific Leasing Corp.*, 221 Ga. App. 768, 770 (1) (472 SE2d 435) (1996) (lessees' attempt to have defective computer equipment corrected not affirmance of contract). Consequently, the trial court erred in concluding that Jones did not rescind it.[3]

We recognize that *Roller-Ice v. Skating Clubs of Ga.*, 192 Ga. App. 140 (384 SE2d 235) (1989), cited by the trial court for the proposition that Jones's "attempt to renegotiate the contract amounts to an affirmative recognition of the contract," conflicts with our holding. In *Roller-Ice*, we concluded that appellant could not claim rescission because it offered to renegotiate certain contracts with appellee. We stated that these renegotiations were "an affirmative recognition of the contracts" and concluded that appellant did not rescind the contract. Id. at 142.

We note first that because all three judges on a three-judge panel did not concur fully in *Roller-Ice*, we are not bound by it. See Court of Appeals Rule 33 (a). *Roller-Ice* has been cited, however, in full panel cases.[4] We therefore examine the principle of law from *Roller-Ice* relied upon by the trial court. Language in *Roller-Ice* stating that renegotiation of the contracts was tantamount to contract affirmance is not a correct statement of Georgia law.

The cases cited by *Roller-Ice* for the broad proposition that renegotiations always indicate recognition and affirmance of an existing contract do not state such a principle. In fact, the theory advanced in *Roller-Ice* actually conflicts with the language of *Gibson v. Alford*, 161 Ga. 672, 673, hn. 5 (132 SE 442) (1926), one of the cases cited in *Roller-Ice*. *Gibson* cites general, well-settled law that a party who "freely and advisedly does anything which amounts to the recogni-

---

[3] It is significant that, although the sale was never consummated between the Cartees, Pittman and Jones, Pittman and other investors successfully purchased the golf course for $1.1 million.

[4] Other cases citing *Roller-Ice* include *GRO Assoc. v. Kerr*, 208 Ga. App. 313, 315 (2) (430 SE2d 647) (1993); *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993); *Great American Builders v. Howard*, 207 Ga. App. 236, 239 (427 SE2d 588) (1993); *American Demolition v. Hapeville Hotel, L.P.*, 202 Ga. App. 107, 109 (1) (413 SE2d 749) (1991); *Morris v. Cowart*, 201 Ga. App. 288, 290 (2) (411 SE2d 81) (1991); *Carpenter v. Curtis*, 196 Ga. App. 235, 238 (395 SE2d 653) (1990) (physical precedent only). These cases, however, do not rely upon *Roller-Ice* for the proposition that renegotiations constitute contract affirmance.

tion of the transaction, or acts in a manner inconsistent with its repudiation" acquiesces in the contract. (Citation and punctuation omitted.) Id. at 685 (5). It further states that a party seeking to avoid a contract based on fraud "must, upon the discovery of the facts, at once announce his purpose and adhere to it." (Citation and punctuation omitted.) Id.

Depending on the character and substance of the renegotiations, they may sometimes indicate affirmance of the contract. They may also indicate that a party does *not* affirm the original contract, or that a party is unwilling to proceed under the terms of the original contract. *Gibson* simply does not support the principle announced in *Roller-Ice* that renegotiation in every case indicates recognition of a contract.[5] To the extent that *Roller-Ice* conclusively states that every attempt to renegotiate any term of a contract must constitute an affirmative recognition, it is overbroad and must be disapproved. In *this* case, as discussed supra, the record indicates that the substance of the renegotiations showed that Jones did *not* affirm the contract.

2. Although the trial court erred in concluding that Jones failed to rescind the contract, the trial court nevertheless reached the correct conclusion that Jones is not entitled to recover.

Having concluded in Division 1 that Jones rescinded the contract, it follows that Jones did avoid the merger clause. See *Thrasher*, supra at 886. But his rescission required him to proceed under a fraud theory; no contract existed upon which he could claim breach.[6] The tort of fraud requires proof of five elements: (1) a false representation; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff. *Lykins v. Nationwide Mut. Ins. Co.*, 214 Ga. App. 577, 579 (2) (448 SE2d 716) (1994). With regard to the element of scienter, "[t]he gist . . . of an action for damages in tort based on the falsity of representations is that they must have involved actual moral guilt." (Citations and punctuation omitted.) *Bennett v. Clark*, 192 Ga. App. 698, 699 (1) (385 SE2d 780) (1989). No evidence was presented below that Cartee acted with any intent to deceive Jones or anyone else when he prepared his own income estimate and provided it to Pittman. Consequently, Jones failed to prove at least one essential element of his claim and cannot recover for that reason.

---

[5] In addition, *Thompson v. Growers Finance Corp.*, 49 Ga. App. 119 (174 SE 192) (1934), does not stand for the proposition for which it is cited in *Roller-Ice*. That case states that an individual cannot rescind a contract in part but that rescission must be total. *Thompson*, supra at 119.

[6] We cannot, as urged by the special concurrence, decide the issues in this case by relying solely on Division 2 of this opinion. In order to claim fraud, Jones must have rescinded the contract. Had he not rescinded, he would be bound by the terms of the contract, including a merger clause.

Moreover, as aptly concluded by the trial court, Jones did not prove another essential element of a fraud claim — reliance. Evidence was presented that Pittman repeatedly told Jones *not* to rely on the figures provided by the Cartees, and that Jones paid the $25,000 earnest money knowing that the two-page handwritten estimate provided by James Cartee did not provide sufficient information on which to base a decision concerning purchase of the golf course. He even signed the contract knowing that the number of customers using the course did not meet his expectations. Even with knowledge that James Cartee's figures were not accurate, Jones signed the purchase and sale agreement. Clearly, Jones did not rely on those figures.

But even if Jones *did* rely on information provided by James Cartee, it was incumbent on Jones to show that his reliance was justified. See *English Restaurant v. A.R. II, Inc.*, 194 Ga. App. 639, 641 (1) (391 SE2d 462) (1990). This he did not do. He signed a $1.4 million contract for the purchase of a golf course, allegedly having seen no more information than a handwritten estimate of yearly expenses and income prepared by James Cartee. He failed to review business records or otherwise verify the accuracy of James Cartee's estimate. He merely accepted the figures provided by James Cartee. Under these circumstances, Jones's blind reliance on James Cartee's figures was unjustified. See *Bennett*, supra at 699. Testimony that Jones and McClain were not permitted to review any records prior to signing the contract and providing the earnest money does not persuade us otherwise. Even assuming the Cartees indicated to Jones that the business records were not available for inspection prior to execution of the contract and provision of the earnest money, it was nonetheless Jones's decision to sign the contract. Nothing in the record suggests that Jones was under duress or undue pressure by the Cartees, and he could have simply refused to enter the contract if he thought that review of the business records was important. He cannot complain now of his own lack of diligence. The trial court did not err in entering judgment against Jones on the fraud claim. A judgment right for any reason will be affirmed. See, e.g., *Goss v. Total Chipping*, 220 Ga. App. 643, 647 (469 SE2d 855) (1996).

*Judgment affirmed. Birdsong, P. J., Johnson, Ruffin and Eldridge, JJ., concur. Andrews, C. J., McMurray, P. J., Pope, P. J., and Blackburn, J., concur specially. Beasley, J., concurs in the judgment only.*

BLACKBURN, Judge, concurring specially.

Although I concur in the judgment and the majority's analysis in Division 2, I disagree with the majority's conclusion in Division 1 that Jones rescinded the contract by efforts to renegotiate the same

and would hold that such efforts did not amount to a rescission. I also do not agree that *Roller-Ice v. Skating Clubs of Ga.*, 192 Ga. App. 140 (384 SE2d 235) (1989) needs to be overruled or disapproved.

1. In Division 1, the majority concludes that Jones' actions in renegotiating the contract adequately communicated his intent to rescind the contract on the basis of the alleged fraudulent representations regarding the finances of the golf course. " 'If a party to a contract seeks to avoid it on the ground of fraud . . ., he must, upon the discovery of the facts, at once announce his purpose and adhere to it.' " (Citation omitted.) *Gibson v. Alford*, 161 Ga. 672, 685 (5) (132 SE 442) (1926). While I agree with the majority that a party, upon learning of fraud, may rescind the contract and then seek to renegotiate the agreement, he must first *clearly* announce his intent to rescind the original agreement. In the absence of such a clear repudiation, renegotiation of the original contract will amount to an affirmance thereof. Because I do not believe that *Roller-Ice* stands for a different proposition, I do not think that it needs to be overruled or disapproved.

On the facts of this case, it does not appear that Jones clearly announced his repudiation of the original contract, but merely sought to renegotiate one term of the contract. If Jones had rescinded the entire contract by renegotiating a single term, as contended by the majority, then such term would be left standing alone with no related terms being of force and effect. The single renegotiated term must be supported by the related terms, and therefore, Jones clearly affirmed rather than rescinded such terms during renegotiation. Moreover, the trial court expressly found that Jones did not in fact rely on the allegedly false financial data in entering into the agreement. Accordingly, even if Jones attempted to rescind the contract based on fraudulent inducement, he had no grounds for doing so.

2. As I would hold that Jones failed to rescind the contract, I believe he is bound by the terms thereof and that it is necessary to consider the merits of his claim that the seller breached the contract by providing him with the false financial estimate.

Section 6 (p) of the contract provided that "[n]o representation or warranty of Seller . . . nor any written statement or certificate furnished . . . to Purchaser pursuant hereto or in connection with the transactions contemplated herein, contains or will contain any untrue statement of a material fact." Jones contends that Cartee breached this provision of the contract by providing an estimate of income and expenses which did not accurately reflect the golf course's finances.

However, the trial court found that Jones did not rely on the estimate and had indeed been repeatedly informed prior to entering into the agreement that the estimate was not correct and should not be

relied upon. Section 10 of the agreement provides that the seller's representations regarding the accuracy of documents provided in connection with the transaction are waivable by the purchaser. By entering into the agreement with knowledge of the unreliability of the estimate, Jones clearly waived any right to claim breach based upon the inaccuracy of such document. Accordingly, the trial court correctly found against Jones on his breach of contract claim.

3. With respect to Jones' claim for fraud, I agree with the majority's analysis in Division 2 that Jones is not entitled to recover.

I am authorized to state that Chief Judge Andrews, Presiding Judge McMurray and Presiding Judge Pope join in this special concurrence.

DECIDED JULY 16, 1997.

*Andrew & Threlkeld, Reid A. Threlkeld*, for appellant.
*Joseph M. Hall*, for appellees.