A98A0448, A98A0449. FLORIDA INTERNATIONAL INDEMNITY COMPANY et al. v. OSGOOD; and vice versa.
(503 SE2d 371)

BEASLEY, Judge.

When Leonard Osgood's rental house burned, he sought to recover on the $25,000 fire insurance policy he had with Florida International Indemnity Company ("FIIC"). After receiving notice of the fire, FIIC investigated and decided not to pay on the ground that Osgood had misrepresented in his insurance application that he had previously suffered no fire losses. In fact he had had numerous fire losses at various properties, including several significant losses in the three years preceding his application. The insurance application and the policy provided that any material misrepresentation by Osgood would void the policy. FIIC did not return the prepaid premium for four and one-half years.

Osgood sued FIIC and its underwriter for the $25,000 and for bad faith damages and attorney fees under OCGA § 33-4-6. The court granted Osgood's motion to disallow FIIC's defense that the policy was void, holding that after learning of the fraud FIIC sent Osgood a notice of termination and non-renewal, which waived this defense. After a bench trial the court awarded Osgood the $25,000 (less a $100 deductible) with no interest and allowed the bad faith issue to be tried to a jury. Following Osgood's presentation of evidence, the court granted FIIC's motion for a directed verdict, because Osgood presented no evidence of bad faith.

Both FIIC and Osgood appealed. The issues are (i) whether, after learning of the fraud, the sending of notice of termination and non-renewal waived FIIC's defense that Osgood's misrepresentations voided the policy ab initio, (ii) whether the court erred in allowing FIIC to present evidence of the fraud to defend the claim of bad faith, (iii) whether Osgood presented evidence of bad faith, and (iv) whether the court should have awarded prejudgment interest on the $24,900.

### Case No. A98A0448

1. Although indicative of an intent to have the policy remain valid, FIIC's retention of the premiums for several years after learning of the fraud is not dispositive. *Columbian Nat. Life Ins. Co. v. Mulkey*[1] held that where the insured makes material misrepresentations in the application, the insurance company need not return the paid-in premiums to rely on the defense the misrepresentations voided the policy. *Mulkey* reasoned that to require such would be an invitation to fraud, for the "party who contemplates obtaining insurance by false representations may well feel that he is taking no chances of loss, but is entering upon a transaction in which he stands to gain large returns without any possibility of endangering his investment."[2]

*Georgia Baptist Orphans Home v. Moon*[3] explained that in *Mulkey* the insurance company was not seeking the equitable relief of rescission. "The action was at law, and the alleged fraud was asserted merely as a *legal* defense."[4] Thus, the requirement of OCGA § 13-4-60 that to rescind the defrauded party must promptly restore to the other party any valuable consideration received under the contract did not apply.

---

[1] 146 Ga. 267 (91 SE 106) (1916).
[2] Id. at 271.
[3] 192 Ga. 81, 85-86 (14 SE2d 590) (1941).
[4] (Emphasis in original.) Id. at 86.

But *Mulkey* qualified its conclusion: "Of course we do not mean to hold that an insurance company might not be estopped from setting up fraud practiced upon it in the procurement of the policy, if it should appear that after the discovery of such fraud the company did not promptly move to have the contract of insurance rescinded, but treated it as valid and binding and continued to receive the premiums thereon."[5] Quoting this language, *Loeb v. Nationwide Mut. Fire Ins. Co.*[6] held that certain actions of the insurer after learning of the application fraud reflected that the insurer did not consider the policy void ab initio and waived the defense that fraud voided the policy. The actions were retaining the prepaid premium and sending a notice of termination to the insured indicating the policy would be in effect until the date of termination a month later. *Loeb* concluded that a directed verdict against the insurance company was required.

In *State Farm Fire &c. Co. v. Jenkins,*[7] the insurance company learned the insured had made misrepresentations in a claim, which according to its terms voided the policy. Nevertheless, the insurance company mailed to the insured a cancellation notice stating that if payment were received before the cancellation date, the policy would be renewed and he would be afforded uninterrupted and continuous coverage. "At no time did [the insurance company] indicate that it considered the entire policy void or forfeited, but instead gave every indication to [the insured] that the policy remained in full force and effect."[8] The trial court concluded that this constituted waiver as a matter of law and granted a directed verdict against the insurance company. *Jenkins* affirmed the ruling.

Similarly, in *Haugseth v. Cotton States Mut. Ins. Co.*[9] the insurance company, after learning of fraud in the application, treated the policy as valid and binding and retained the insured's premiums as earned. Holding that such waived the defense of voidness, *Haugseth* explained: " 'If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise, he can not avoid or rescind such contract.' *Gibson v. Alford*, 161 Ga. 672, 673 (5) (132 SE 442) [(1926)]. [Cits.]"[10] One significant reason for this rule in

---

[5] 146 Ga. at 272.
[6] 162 Ga. App. 561, 563 (292 SE2d 409) (1982).
[7] 167 Ga. App. 4 (305 SE2d 801) (1983).
[8] Id. at 6 (1).
[9] 192 Ga. App. 853 (386 SE2d 725) (1989).
[10] Id. at 855; see *Jones v. Cartee*, 227 Ga. App. 401, 404-405 (1) (489 SE2d 141) (1997) ("a party who 'freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation' acquiesces in the contract. . . . [A] party seeking to avoid a contract based on fraud 'must, upon the discovery of the facts, at once announce his purpose and adhere to it' ") (citations omitted).

insurance cases is that leading the insured to believe the validity of the policy is not questioned lulls the insured into not purchasing other insurance and thus subjects the insured's property to continuing non-coverage.[11]

After receiving notice of the December 8, 1992 fire, FIIC immediately conducted an investigation and learned by December 29 that Osgood had made material misrepresentations in the application about the previous fires. After further investigation confirmed these facts, FIIC in February decided not to pay the claim. In May FIIC received a report that Osgood admitted to the previous fires.

FIIC did not notify Osgood that it considered the policy void. Instead, in July 1993, months after learning of the fraud, it sent a notice to Osgood informing him "in accordance with the terms and conditions of the . . . policy that the . . . policy will expire effective at and from the hour and date mentioned above [August 26, 1993, at 12:01 a.m.] and the policy will NOT be renewed." The insurance agent testified this was a "combination" notice in that it gave notice the policy was effective until August 26, at which time it would expire or terminate, *and* it gave notice the policy would not be renewed.

Had the notice only informed Osgood the policy would not be renewed, then under *Massachusetts Bay Ins. Co. v. Hall*[12] it would have pertained only to "a future event covering a future time period, and not on the status of the policy in force. . . . [It would] advise of a discontinuation of the contractual relationship as it relates to that period of time when a renewal would ordinarily be effected." It would not have addressed the validity of the then-current policy. But the notice did more than this. With knowledge of the alleged fraud, FIIC formally informed Osgood that in accordance with the policy provisions it "will expire effective at and from" a certain hour and day. Another part of the notice reiterated: "CANCELLATION OR TERMINATION WILL TAKE EFFECT AT" the specified time some weeks later.

Such language focuses on the status of the policy and assures that it is alive and well and will continue through the designated expiration date. This notice is similar to the termination notice found in *Loeb* and the cancellation notice found in *Jenkins*, both of which "gave every indication to [the insured] that the policy remained in

---

[11] See *Mass. Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 353 (2) (b) (395 SE2d 851) (1990). Compare *Parks v. State Farm Gen. Ins. Co.*, 231 Ga. App. 26, 30 (497 SE2d 575) (1998) (Beasley, J., dissenting), where the insured was aware the insurance was not in force despite later-received letters to the contrary, and in fact obtained alternative insurance.

[12] Supra, 196 Ga. App. at 353-354 (2) (b).

full force and effect."[13] FIIC's retention of the prepaid premium until after the first aborted trial in April 1997, nearly four and one-half years after learning of the fraud, and its failure to announce the policy was void also communicated that the policy was honored. Because these actions as a whole, all taken after learning of the fraud,[14] are inconsistent with a defense that fraud voided the policy ab initio, the court did not err in holding FIIC waived the defense.

### Case No. A98A0449

2. Although, with regard to liability under the policy, FIIC waived its defense the policy was void, it did not waive its defense against the bad faith claim that the reason it did not pay was Osgood's fraud. These are two separate defenses to two separate claims. Waiver of the right to deny breach of contract does not automatically preclude the showing of reasonable grounds for the breach so as to avoid a finding of bad faith. The court did not err in allowing FIIC to present evidence on this point.

Osgood's argument, that the court's order disallowing this evidence to defend against the policy claim collaterally disallowed evidence to defend against the bad faith claim, fails for two reasons. It is illogical and "[a] final judgment is required before any possibility of application of the doctrines of res judicata or collateral estoppel may arise."[15] There was no final judgment when the court permitted the evidence.

3. It was not error to direct a verdict on the bad faith claim. OCGA § 33-4-6 requires the insured to show that the refusal to pay the insurance proceeds was in bad faith. The mere fact of nonpayment is "not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith."[16]

"Ordinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties. Good faith is determined by the reasonableness of nonpayment of a claim."[17] Because the damages are in the nature of a penalty, the statute is strictly construed and the right to

---

[13] *Jenkins*, supra, 167 Ga. App. at 6.

[14] The parties' focus in their briefs on the time of Osgood's demand or making a claim as determinative is misdirected. The key is the time of FIIC's learning of the fraud.

[15] (Citations omitted.) *Quinn v. State*, 221 Ga. App. 399, 400 (2) (471 SE2d 337) (1996); see *Carter v. State*, 231 Ga. App. 42 (2) (497 SE2d 812) (1998).

[16] *Interstate Life &c. Ins. Co. v. Williamson*, 220 Ga. 323, 326 (138 SE2d 668) (1964).

[17] (Citations omitted.) *Intl. Indemnity Co. v. Collins*, 258 Ga. 236, 238 (2) (367 SE2d 786) (1988); see *Interstate Life &c. Ins. Co. v. Brown*, 146 Ga. App. 622, 623 (3) (247 SE2d 205) (1978) ("[n]o evidence of bad faith having been introduced, the issue should not have been presented to the jury") (citations and punctuation omitted).

such recovery must be clearly shown.[18] A directed verdict is indicated where the insurer has reasonable grounds to contest the claim or the question of liability is close.[19]

Reasonable grounds existed. In Osgood's insurance application, he misrepresented his history of fires, a material consideration in issuing fire insurance policies. The insurance application and the policy both provided that material misrepresentations voided the policy, which would release FIIC from its obligation to pay.

Osgood points to FIIC's later waiver of its legal defense as evidence of bad faith in not paying the claim. The waiver did not eliminate the fact that Osgood had defrauded FIIC. Even the issue of whether there was waiver was, in the words of Osgood, a "confusing and complex issue." The court also deemed it "complicated" and "intricate and difficult of solution." It was a close question. Such, as a matter of law, justifies refusal to pay. It does not constitute bad faith.

4. Osgood enumerates as error the denial of prejudgment interest on the $24,900. He reasons that the fire was a total loss and the amount was liquidated. He seeks interest from 60 days after his attorney's demand letter, which FIIC concedes began the running of the statutory 60-day period.[20]

OCGA § 7-4-15 provides: "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand." Such prejudgment interest "is mandatory rather than discretionary and is awarded by a judge as a matter of law."[21] Liquidated insurance claims are subject to prejudgment interest.[22]

The parties stipulated that the damages were liquidated at $24,900. Plaintiff is entitled to prejudgment interest at the legal rate of seven percent[23] on the $24,900 beginning 60 days after the demand letter of August 18, which shall be awarded by the trial court upon

---

[18] *Williamson*, supra, 220 Ga. at 325.

[19] *Roland v. Ga. Farm Bureau &c.*, 265 Ga. 776, 778 (2) (462 SE2d 623) (1995) (doubtful question justified refusal to pay; directed verdict required); *Grange Mut. Cas. Co. v. Law*, 223 Ga. App. 748, 750 (2) (479 SE2d 357) (1996) (evidence of arson justified refusal to pay; j.n.o.v. required); *Schoen v. Atlanta Cas. Co.*, 200 Ga. App. 109, 111 (407 SE2d 91) (1991) (close question justified refusal to pay; summary judgment affirmed); *Ga. Intl. Life Ins. Co. v. Harden*, 158 Ga. App. 450, 455 (2) (280 SE2d 863) (1981) (close question justified refusal to pay; bad faith award reversed).

[20] See OCGA § 33-4-6.

[21] (Citations omitted.) *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 299 (3) (427 SE2d 789) (1993).

[22] *Collins*, supra, 258 Ga. at 238 (3); *Equicor, Inc. v. Stamey*, 216 Ga. App. 375, 378-379 (3) (454 SE2d 550) (1995); *Nat. Fire Ins. Co. v. Thompson*, 51 Ga. App. 625, 627 (3) (181 SE 101) (1935); *Ins. Co. of North America v. Folds*, 42 Ga. App. 306, 307 (4) (155 SE 782) (1930).

[23] OCGA § 7-4-2.

remand.

*Judgment affirmed in Case No. A98A0448. Judgment affirmed in part, reversed in part and remanded with direction to award pre-judgment interest in Case No. A98A0449. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 26, 1998 — 

*Karsman, Brooks & Callaway, R. Krannert Riddle*, for appellants.

*Wiseman, Blackburn & Futrell, James B. Blackburn, Jr., Michael L. Edwards*, for appellee.