## 63666. LOEB v. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.

BIRDSONG, Judge.

Insurance Contract. Wayne Andress was the owner-operator of three retail clothing store outlets. One of those stores was located in a shopping center on Snapfinger Road. Andress opened this store sometime in early 1978. He sought "full" insurance from an insurer unrelated to this action. His Snapfinger store was burglarized in October 1978, and Andress was informed that the contents of the store were not covered by burglary insurance. He commenced negotiations with an independent agent who had an office in the same shopping center to obtain the insurance coverage he desired. While these negotiations were underway (in October and November 1978), the store was once again burglarized on November 26, 1978. The agent effectuated the policy including burglary insurance on December 1, 1978 at which time Andress paid an advance premium of over $1,800. Andress did not disclose the November 26 burglary but did indicate the burglary of October 8 which was not covered. Two days after the insurance was effective (December 1), the store was once again burglarized on December 3, 1978. Andress made appropriate notice of claim for loss to the company. Because of certain unusual circumstances, the insurer, Nationwide Mutual Fire Ins. Co. elected to investigate the circumstances and determine the actual stock allegedly stolen during the burglary.

A CPA was hired by Nationwide to investigate the loss of December 3 and ascertain if any of the loss of October 8 might have been included in the claim for the December 3 loss. During this investigation, in early April 1979, the CPA became aware of the

burglary loss of November 26, 1978. This information was communicated to Nationwide on or about April 10, 1979. Because of great difficulty in ascertaining what stock had been purchased at what time and in which of Andress' three stores the particular merchandise might have been placed for sale, the CPA sought to obtain the sales tax records for the several months involved. The sales tax office of the state would not release these figures to the CPA but would release them to Andress. It was asserted at trial that Andress refused to obtain these figures and documents and surrender them to the CPA thus rendering the possibility of reconciling what items might have been sold or stolen very difficult. Accordingly, on May 7, 1979, Nationwide informed Andress that the insurance coverage was terminated (cancelled) effective June 9, 1979 because of lack of cooperation.

On June 4, 1979, a fourth burglary occurred at the store. Because the insurance ostensibly was still in effect, Andress filed a second claim for the loss of June 4, 1979. Andress argued extensively at trial that Nationwide had never returned any part of the premium while apparently Nationwide contended that it had earned the premium up until June 9 and was not required to return any part of the premium. Andress was adjudicated a bankrupt and his trustee in bankruptcy has pursued on behalf of the bankrupt estate a claim for the losses of December 3, 1978 and June 3, 1979 plus attorney fees and penalty for wrongful refusal to settle the claim within the prescribed time. Andress moved for partial directed verdict as to the issue of waiver of fraud, failure to make timely claim on the second loss of June 1979, and failure to cooperate with the insurer as required by the policy. The trial court denied the motions for directed partial verdicts and submitted the issues to the jury. The jury returned a verdict for the insurer. Following the denial of a motion for new trial on the above grounds plus a charge by the trial court on fraud in the procurement of the policy, Andress brings this appeal. *Held:*

We reverse. The principal defense advanced by Nationwide was that the policy was void ab initio, i. e., initiated by the fraud practiced upon it by Andress in the inception of the insurance contract by failing to disclose the November 26, 1978 burglary. It argued that the failure to return the premiums was not fatal to its defense, citing as authority *Curry v. Washington Nat. Ins. Co.,* 56 Ga. App. 809 (194 SE 825); *Harris v. Bankers Health &c. Ins. Co.,* 40 Ga. App. 678 (150 SE 856); *Columbian Nat. Life Ins. Co. v. Mulkey,* 19 Ga. App. 247 (91 SE 344). It is true these cases seem to circumvent the rule that where there are material misrepresentations in the applications thus voiding the policy, the company cannot avail itself of those misrepresentations in an action on the policy without first tendering

back to the insured the amount of the premium paid. However, we note that each of these cases deals with a rescission of the contract in question. In this case, Nationwide accepted an $1,800 premium extending coverage to Andress effective December 1, 1978. During the life of the policy, Nationwide became aware on or about April 10, 1979 that Andress had failed to disclose a burglary on November 26, 1978, just five days before the policy's effective date. Another month passed and on May 7, 1979, Nationwide *terminated* (not rescinded) the policy effective June 9, 1979. In its letter of notice of termination, Nationwide advised Andress that notice was necessary not only to cancel the coverage but to advise Andress to obtain other protection because *continuous* protection was important. It is clear therefore that Nationwide did not consider the policy void from December 1 but considered it in effect until June 9, 1979. Under this reasoning, it was appropriate for Nationwide to retain the earned premiums. However, as was pointed out in *Columbian Nat. Life Ins. Co. v. Mulkey*, 146 Ga. 267, 272 (91 SE 106): "Of course we do not mean to hold that an insurance company might not be estopped from setting up fraud practiced upon it in the procurement of the policy, if it should appear that after the discovery of such fraud the company did not promptly move to have the contract . . . rescinded, but treated it as valid and binding and continued to receive the premiums thereon." Such is this case. We find it inappropriate for Nationwide to rely upon an instruction that the jury could consider whether Andress practiced fraud upon it by failing to disclose the November 26, 1978 burglary of his store premises resulting in a void policy and at the same time rely upon the validity of the policy to warrant its (Nationwide's) retention of an earned premium. In view of the posture of the evidence and the contentions of the parties, that issue should have been removed from the jury. We cannot say, in view of the strong inferences of fraud created by Nationwide's evidence, that leaving this issue with the jury was not inherently prejudicial to Andress. Insofar as the remaining issues are concerned (i. e., failure to cooperate and to file a notice of loss), there was conflicting evidence giving rise to issues of fact. The trial court therefore did not err in submitting those issues to the jury under appropriate instructions. *Nationwide Mut. Ins. Co. v. Ware,* 140 Ga. App. 660, 664 (231 SE2d 556).

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

DECIDED JUNE 14, 1982.

*Kirby G. Bailey,* for appellant.

*William A. Dinges, Malcolm S. Murray,* for appellee.