77020. SANDNER, INC. v. CENTENNIAL INSURANCE
COMPANY.
77021. CENTENNIAL INSURANCE COMPANY v. SANDNER,
INC. et al.
(375 SE2d 611)

SOGNIER, Judge.

Sandner, Inc. brought suit against Bayley, Martin and Fay (BMF), its insurance agency, alleging breach of fiduciary duty and breach of contract, and negligence in failing to procure workers' compensation insurance for the company. BMF answered denying liability, and filed a third-party complaint against Centennial Insurance Company (Centennial). Sandner's motion to add Centennial as a defendant was then granted, and Sandner alleged theories of recovery against Centennial based on negligence and breach of an alleged oral contract to provide retroactive workers' compensation insurance. The motion for summary judgment made by BMF against Sandner was not ruled on because Sandner dismissed its claims against BMF. Centennial's motion for summary judgment against Sandner was granted as to the contract claim but denied as to the negligence claim. The trial court also denied both Centennial's motion for summary judgment against BMF and its motion to dismiss BMF's third-party complaint. These appeals ensued.

The record reveals that BMF is an independent insurance broker with an agency agreement with Centennial. In 1981, Centennial, through BMF as broker, issued several policies of insurance to Brill, Inc. (Brill), a wholly owned subsidiary of Carpro, Inc. These policies, including a workers' compensation policy which was subsequently renewed for one-year periods, showed the named insureds to be Brill and Stone Mountain Assets, Inc. In 1982, Sandner was incorporated as another subsidiary of Carpro, Inc. and BMF assumed the role of insurance adviser to Sandner, as it had done with Brill. Victor H. Hoberg was the BMF account representative who dealt with Brill and

Sandner. At the time of Sandner's incorporation, Hoberg obtained for it property and liability insurance, but workers' compensation insurance was rejected at that time by Sandner because it had no employees of its own but was using Brill employees. Hoberg advised that workers' compensation insurance would be required when Sandner acquired three or more employees. Hoberg wrote to Peggy Deter, an underwriter at Centennial, that "we expect to add other coverages, [a]uto and [workers'] [c]ompensation, as these exposures develop."

In 1983 three accidents occurred involving Sandner employees. BMF submitted claims for the 1983 accidents to Centennial for payment under the Brill workers' compensation policy and Centennial paid these claims, although it contends it did so with the understanding that Sandner was still using Brill employees. In September 1984, while investigating a second claim for workers' compensation benefits by Patrick Burton, one of the Sandner employees involved in the 1983 accidents, Centennial discovered that the employees whose 1983 claims had been paid actually had been employed by Sandner rather than Brill. Centennial therefore controverted the claim, informing Sandner that no workers' compensation coverage existed for Sandner employees. Sandner then obtained a separate workers' compensation policy which provided prospective coverage for its employees. However, believing coverage already existed for Sandner employees under the Brill policy, Hoberg sought to have Sandner added to the Brill policy by endorsement as an additional named insured. In deposition testimony, Hoberg stated that he confirmed with Deter at Centennial that the endorsement adding Sandner as a named insured would be accepted. Hoberg testified he did not specifically discuss with Deter the issue of whether the coverage would be retroactive. However, Sandner subsequently submitted an affidavit by Hoberg which was considered by the trial court before denying Sandner's motion for reconsideration, after summary judgment had been granted against it on the contract issue. In the affidavit, Hoberg stated it was clear *to him* that retroactive coverage would result from the endorsement. Hoberg informed Sandner in a letter dated September 20, 1984 that Centennial's underwriter had agreed to process an endorsement, which should eliminate coverage questions, but Hoberg was later informed by Deter that her superiors had not agreed to add Sandner by endorsement to the Brill policy. As a result of Centennial's denial of coverage under the Brill policy, Sandner instituted this suit.

1. In the main appeal Sandner contends the trial court erred by granting partial summary judgment to Centennial on the contract issue. The trial court based its grant of partial summary judgment in favor of Centennial on its determination that the language of the Brill policy itself "prohibit[ed] oral amendments (i.e. Brill's workers' compensation policy in effect in September 1984 states that '[t]he terms

of this policy may not be change[d] or waived except by endorsement issued by us to be part of this policy,'[)] and there is no meeting of the minds as far as essential elements of the alleged oral agreement to add Sandner as an additional insured to the Brill workers' compensation policy."

Sandner contends the language in the Brill policy does not bar the agreement here, because Hoberg promised Sandner *in writing* that such coverage would be provided. However, we find the trial court's ruling correct even if Hoberg's September 20, 1984 letter is viewed as a promise in writing, as urged by Sandner. The Brill policy prohibited not only oral agreements, as pointed out by the trial court, but any change or waiver of any terms of the policy except by endorsement issued by Centennial to be a part of the policy. This language in the policy is clear and unambiguous, and " '(n)o construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation.' [Cit.]" *Citicorp Indus. Credit v. Rountree*, 185 Ga. App. 417, 421 (364 SE2d 65) (1987). It is uncontroverted that Centennial never issued an endorsement to the Brill policy retroactively adding Sandner as an additional named insured. Further, it is clear, despite Sandner's argument to the contrary, that the letter from Hoberg to Sandner is not an "endorsement issued by [Centennial] to be part of" the Brill policy. Accordingly, even if the letter from Hoberg is a promise in writing to provide retroactive insurance, it is not such a change in the policy which is permitted by the clear and unambiguous policy language itself.

We need not consider Sandner's argument that the trial court incorrectly found there was no meeting of the minds as to an agreement to add Sandner to the Brill policy as a named insured, because even assuming there was such a meeting of the minds, the Brill policy language prohibited changing its terms except by endorsement issued by Centennial, as discussed above.

The issue, raised by Sandner, of whether Hoberg had apparent authority, as an agent of Centennial, to bind Centennial by promising Sandner that coverage would be retroactive, is irrelevant under the circumstances presented here, where the record reveals that Hoberg's September 20, 1984 letter to Sandner made no such promise. In that letter, Hoberg merely stated that "[t]he underwriter [at Centennial] has agreed *to process an endorsement* adding Sandner as additional named insured to your Workers' Compensation policy." (Emphasis supplied.) A statement that the carrier had agreed to *process* the endorsement after new information was submitted cannot be construed as tantamount to a promise that the endorsement would be *approved*.

Finally, contrary to Sandner's argument, Centennial may not be held to have waived its right to deny coverage for Burton's 1984 in-

jury because it mistakenly paid the three previous claims for Sandner employees. Although waiver or estoppel has been applied to create a jury question as to an insurer's liability to an insured in some situations, see, e.g., *National Fire Ins. Co. v. Thompson*, 51 Ga. App. 625 (181 SE 101) (1935) (insurer had knowledge of foreclosure at time of issuance of policy); *Adams v. Wash. Fid. Nat. Ins. Co.*, 48 Ga. App. 753 (173 SE 247) (1934) (insurer accepted late payments and policy language regarding same was vague); *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863 (303 SE2d 43) (1983) (insurer knew all the facts concerning an exclusion and paid claim with such knowledge), neither waiver nor estoppel has been found concerning such basic elements of the policy as who is insured. " ' "(N)either waiver nor estoppel can be used to create a liability not created by the contract and never assumed by the insurer under the terms of the policy." (Cits.)' [Cit.]" *Southeastern Fidelity Ins. Co. v. Timmons*, 172 Ga. App. 366, 367 (323 SE2d 183) (1984).

The trial court did not err by granting summary judgment to Centennial on Sandner's contract claim.

2. In the cross-appeal, Centennial appeals from the denial of its motions for total summary judgment against Sandner and BMF, and from the denial of its motion to dismiss the third-party complaint. Centennial first contends the trial court erred by failing to grant summary judgment in its favor against Sandner on the negligence claim. We agree and reverse.

Even assuming, without deciding, that Centennial had a duty toward Sandner in this regard, and that Centennial's acts or omissions constituted a breach of that duty, it is well established that, except in cases where there is fraud or misrepresentation or reliance by the insured on the advice of an agent who held himself out as an expert in determining the type and/or amount of coverage needed, an insured's duty is to examine its policies and determine whether proper or desired coverage is provided. *King v. Brasington*, 252 Ga. 109, 110 (1) (312 SE2d 111) (1984); *Wright Body Works v. Columbus &c. Ins. Agency*, 233 Ga. 268 (210 SE2d 801) (1974). Hoberg's letter cannot be the basis of a claim of fraud or misrepresentation because the 1984 Burton injury had already occurred at the time the letter was written and, thus, it was impossible for Sandner to claim detrimental reliance on the letter. Moreover, the record shows that Hoberg advised Sandner that workers' compensation coverage would be required once Sandner acquired three employees. Accordingly, here, as in *Ethridge v. Assoc. Mutuals*, 160 Ga. App. 687, 689 (288 SE2d 58) (1981), the insured had a duty to ascertain whether the policies in existence afforded it the coverage it needed and desired. Here, as in *Ethridge*, "[t]o hold otherwise would allow a damaged insured to make a 'fully covered' allegation against an [insurer] each time an insurance policy

did not cover a particular type of loss." Id.

3. In the remainder of the cross-appeal, Centennial enumerates as error the trial court's denial of its motion for summary judgment against BMF and the denial of its motion to dismiss BMF's third-party complaint. Our examination of the third-party complaint discloses that it did not include a claim that BMF was damaged directly by Centennial, but rather was solely a traditional "attempt to pass on to [Centennial] all or part of the liability asserted against [BMF]. . . . [Cits.]" *Cohen v. McLaughlin*, 250 Ga. 661, 662 (1) (301 SE2d 37) (1983). However, while the rule is well established in such cases that " ' "[t]he absolute requirement of every third-party proceeding is that its purpose must be to impose upon the third-party defendant a liability for part or all of the liability asserted by the original plaintiff against the third-party plaintiff . . ." ' [cits.]," id., we need not address the question of whether BMF's third-party complaint was no longer proper once Sandner's underlying claims against BMF were voluntarily dismissed, as BMF is not an appellant in this case. "Since a cross-appeal cannot be made against a party who is not an appellant," *Glennville Wood &c. Co. v. Riddlespur*, 156 Ga. App. 578 (1) (276 SE2d 248) (1980), Centennial's appeal against BMF was not timely filed. Although OCGA § 5-6-38 (a) provides that an "appellee may institute cross-appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant; and the appellee may present for adjudication on the cross-appeal all errors or rulings adversely affecting him; and in no case shall the appellee be required to institute an independent appeal on his own right," "[a]n appellee becomes such when an appeal is taken against him by the appellant. An appellee is '(t)he party in a cause against whom an appeal is taken.' [Cit.] By definition a party cannot cross-appeal, if the party he wishes to complain against is not an appellant. He can take a direct appeal if he files within the prescribed statutory time limits." *Glennville Wood*, supra at 579 (1). Accord *All American Assur. Co. v. Brown*, 177 Ga. App. 402, 405 (339 SE2d 611) (1985). Accordingly, we dismiss the cross-appeal against BMF.

*Judgment affirmed in Case No. 77020. Judgment reversed in part and dismissed in part in Case No. 77021. Birdsong, C. J., Banke, P. J., Pope, Benham, and Beasley, JJ., concur. Carley, J., concurs in the judgment only. Deen, P. J., and McMurray, P. J., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

While concurring fully with Division 3 of the majority opinion and with the judgment of Division 2, I cannot concur with the holding in Division 1 that the insurer was entitled to summary judgment on Sandner's contract claim.

In concluding that no justiciable contract claim existed, the majority opinion holds Sandner to the requirement in the Brill insurance policy that "[t]he terms of this policy may not be change[d] or waived except by endorsement issued by us to be part of this policy. . ." The problem with that disposition, of course, is in holding Sandner to the terms of an insurance contract to which it was not a party.

Sandner's contract claim, as I understand it, is that Sandner and Hoberg, as an agent with authority to bind Centennial, reached an agreement for insurance coverage. In a letter to Brill and Sandner, Hoberg confirmed that "[t]he underwriter has agreed to process an endorsement adding Sandner as additional named insured to your workers' compensation policy. This endorsement should eliminate coverage questions involving Patrick Burton and workers' compensation for Sandner." Construing this letter in the light most favorable to Sandner as respondent to Centennial's motion for summary judgment, it indicates that the insurer had definitely agreed to the endorsement. (Processing the endorsement presumably would entail physical preparation of the endorsement, and no doubt an adjustment on premiums.) The fact that the agreement was to be effectuated by adding Sandner as an insured under the Brill policy, rather than issuance of a new and separate policy, should provide no basis for defeating Sandner's contract claim.

There was evidence that could support a finding that Centennial reneged on a binding agreement for insurance. Accordingly, I must respectfully dissent from the affirmance of the trial court's grant of summary judgment for Centennial on this issue.

I am authorized to state that Presiding Judge McMurray joins in this opinion.

DECIDED OCTOBER 19, 1988 —
REHEARINGS DENIED NOVEMBER 15, 1988 — 

*Kilpatrick & Cody, Robert E. Shields, Thomas H. Christopher, David P. Phippen*, for appellant.
*Neely & Player, John W. Winborne III*, for appellee.