A93A0714. AMERICAN RESOURCES INSURANCE COMPANY
v. CONNER et al.
(434 SE2d 737)

SMITH, Judge.

We granted the application of American Resources Insurance Company for leave to appeal in this workers' compensation case. The appeal is from the superior court's affirmance of a decision of the State Board of Workers' Compensation that American is liable for coverage of Conner's compensable claim.

The facts, as found by the ALJ and adopted by the Board, show that Vector Construction, Inc., a general construction contractor, and Omega Interiors, a wallboard installation subcontractor, are sister corporations sharing the same office suite and having common ownership and officers. Ethan Krash is an officer in both corporations. Krash, through his agent, Bill Murphy, obtained separate workers' compensation insurance policies for Omega and Vector. Murphy, in turn, proceeded through an intermediary, ARS Underwriters, and its employee Bruce Baldwin, who dealt with American. American issued the policies for terms commencing October 24, 1989 and ending October 24, 1990. Because of an adverse loss ratio, however, American canceled Omega's policy effective June 11, 1990. Vector's policy continued in effect.

After the cancellation of the Omega policy, Murphy and Baldwin made several attempts to persuade American to reconsider its decision, proposing as an incentive that Omega submit to a $10,000 deductible policy. They also threatened to place Vector's insurance elsewhere if Omega's policy was not reinstated or a new policy issued. American's unambiguous response was that it was not interested in insuring Omega under any circumstances, and that if necessary, it would close both accounts rather than insure Omega. Vector did not follow through on its threat to place its coverage elsewhere and a renewal policy was issued to Vector on October 24, 1990, for a one-year term.

Since Vector was considered a good workers' compensation risk, while Omega was considered a bad risk, Baldwin suggested the idea of "leasing" Omega's employees to Vector through an employee leasing agreement, which he had successfully employed previously to obtain insurance coverage for other clients. Sometime between October 1, 1990 and October 18, 1990, Omega and Vector executed such an agreement, using forms supplied by Baldwin, which purported to move Omega's employees to Vector for purposes of benefit administration, including workers' compensation coverage. Baldwin then requested that American issue endorsements to Vector's policy providing coverage for the additional job classifications of "Wallboard-Install and Drivers" and "Clerical" workers, the same classifications covered in Omega's previous canceled policy. Payrolls of $100,000 and $20,000 were provided for each respective classification added. In December 1990, American issued the requested endorsements with an effective date retroactive to October 31, 1990.

Omega continued to operate, and Conner was injured while working on an Omega project on February 5, 1991. Conner was an employee of Omega, not Vector. The parties stipulated that his claim is compensable.

The ALJ found that the language in the policy did not expressly exclude employees covered by an employee leasing agreement. However, he also found that the agreement in issue was "intended . . . to provide workers' compensation insurance for Omega employees through Vector without the knowledge of American"; and that it was "a subterfuge, if not an outright fraud." Nevertheless, the ALJ concluded that information possessed by American should have raised "red flags" requiring it to inquire or investigate further the request before issuing the endorsements. He concluded that American's failure to do so before issuing the endorsements resulted in coverage.

1. American contends the ALJ's conclusion of law, imposing upon it a duty to investigate further, is not supported by evidence in the record. We agree.

(a) In support of his conclusion of coverage the ALJ pointed to

"red flags" created by the identical nature of the employee classifications in Vector's requested endorsement and Omega's prior policy, and the known relationship between Omega and Vector. The record reveals, however, that these "red flags" were not of a nature sufficient to place American on notice that it might be covering Omega employees under the Vector endorsements. The payroll amounts for the identical classifications listed in Omega's previous, separate policy had been far in excess of the amounts listed in Vector's request for an endorsement. Further, as American's underwriting manager testified, it was not unusual for a general contractor to request coverage for wallboard installation, an activity related to general contracting. Indeed, even while insuring Omega separately, American had issued a policy to Vector containing an endorsement for the wallboard installer job classification "if any basis [existed]." We find, therefore, no evidence in the record supporting the ALJ's conclusion that the information possessed by American demanded that it question or further investigate Vector's requested endorsement.

(b) Moreover, Baldwin's alleged knowledge that the employee leasing agreement was intended to cover Omega employees is not attributable to American. Contrary to Vector's argument, Baldwin was not American's agent. The ALJ made no finding of fact as to this issue. However, Baldwin testified that ARS was an independent insurance agency that placed insurance with several different carriers, and both Baldwin and American's underwriting manager testified that Baldwin did not have actual authority to bind coverage for American. See generally *Alexander Underwriters &c. v. Lovett*, 177 Ga. App. 262, 265-266 (2) (339 SE2d 368) (1985).

Neither may Baldwin's knowledge be imputed to American under an apparent authority theory, as the record shows that American never had direct contact with Vector, never held out Baldwin as its agent, and never led Vector to believe Baldwin had authority to act on its behalf. See *Howard v. St. Paul &c. Ins. Co.*, 180 Ga. App. 802, 804 (1) (350 SE2d 776) (1986).

2. The essence of the rationale given by the ALJ for his conclusion that coverage existed is that American should have known that the endorsements to the Vector policy were actually intended to cover Omega employees, and is therefore estopped to deny coverage. The law is otherwise. Although the doctrine of estoppel has been applied in certain situations to find coverage where the insurer knew certain facts concerning the insured or the claim and was deemed to have accepted the risk, estoppel "has [not] been found concerning such basic elements of the policy as who is insured." *Sandner, Inc. v. Centennial Ins. Co.*, 189 Ga. App. 277, 280 (1) (375 SE2d 611) (1988), modified on other grounds, 259 Ga. 317 (380 SE2d 704) (1989).

Although the facts as found by the Board are conclusive and

binding on this court if supported by any evidence, *Little v. Cox Enterprises*, 195 Ga. App. 211, 212 (393 SE2d 57) (1990), and the ALJ found that the language of the Vector policy does not *exclude* leased employees from coverage, he also found that the employee leasing agreement was "a subterfuge, if not an outright fraud."

The evidence shows that the subterfuge was Vector's intention to cover Omega employees under the endorsements to its policy, through the employee leasing agreement, while withholding knowledge of this arrangement from American. Given that American had previously refused under any circumstances to agree to cover Omega employees, even at the risk of losing the Vector account, it is clear that had American known the employee leasing agreements were intended to cover Omega employees, it would not have issued the endorsements. Coverage of Omega employees was material to the risk assumed by American. Under those circumstances, the evidence demands a finding that no coverage existed, *Smith v. Integon Life Ins. Corp.*, 195 Ga. App. 481-482 (393 SE2d 741) (1990), and American is not estopped to deny that coverage exists for Omega employees. OCGA § 33-24-7 (b).

3. We reject Vector's argument that the judgment below must be affirmed because American waived its right to avoid coverage when, instead of rescinding the Vector policy and tendering back the premium upon learning of the purported subterfuge, it canceled the Vector policy prospectively. See *Loeb v. Nationwide Mut. Fire Ins. Co.*, 162 Ga. App. 561, 562-563 (292 SE2d 409) (1982). Because only the endorsements, and not the entire Vector policy, were involved in the subterfuge, and no additional premium had been paid for the endorsements, the principle involved in *Loeb* is inapplicable here. No basis existed for rescinding the entire policy. American has not sought to avoid paying claims made by legitimate Vector employees during the period the Vector policy was in effect.

Since our review of the record has revealed no basis for coverage of Conner's claim under the policy issued by American to Vector, the judgment against American must be reversed.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 12, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 —

*Van Gerpen, Hoffman & Harris, G. Scott Hoffman, Terry L. Strawser,* for appellant.

*Swift, Currie, McGhee & Hiers, Robert R. Potter, Melodie L.*

*Belcher, Thacker & Thacker, Louis C. Thacker,* for appellees.