A01A1410. WILDER et al. v. JEFFERSON INSURANCE
COMPANY OF NEW YORK.
(555 SE2d 771)

ANDREWS, Presiding Judge.

Jefferson Insurance Company of New York ("Jefferson") brought a declaratory judgment action asking the trial court to declare that a tow truck leased by LaCosta Recovery Services, Inc. was not covered under a commercial vehicle policy issued by Jefferson to LaCosta. LaCosta was owned by C. T. DeFranks who operated a towing business with numerous tow trucks insured under the policy. The coverage question arose after the tow truck at issue was involved in an accident, and claims were made against DeFranks and LaCosta by Ella Wilder and others who were injured in the accident. Jefferson made alternative claims that there was no coverage because: (1) the tow truck at issue was never listed as an insured vehicle under the policy, or (2) even if the vehicle was covered under the policy, the policy was void from its inception because of fraudulent misrepresentations by the insured. In the event the second alternative was

accepted and the policy was found to be void from its inception, Jefferson further characterized its action as a bill in the nature of an interpleader by which it tendered the entire amount of the policy premiums paid by the insured under the void policy. Jefferson asked the trial court to determine what portion of the tendered premiums should be refunded to the insured, and what portion was earned by Jefferson because of the requirement that it provide compulsory vehicle insurance.

The trial court granted summary judgment to Jefferson under the first alternative finding that the tow truck was not covered because it was never an insured vehicle under the policy. In the same order, the trial court also denied a motion to dismiss the declaratory judgment action which alleged there was no actual controversy to support the action because Jefferson had already declared the policy void. This appeal was taken by Wilder and other parties injured in the accident, who were named as defendants in the declaratory judgment action because of their interests in coverage under the policy. For the reasons set forth below, we find that the trial court correctly denied the motion to dismiss and correctly concluded that the tow truck was not covered by the Jefferson policy. Accordingly, we affirm the grant of summary judgment in favor of Jefferson.

1. The trial court correctly denied the motion to dismiss the declaratory judgment action.

After filing the declaratory judgment on October 11, 1996, Jefferson notified its insured on October 25, 1996, that it was cancelling the policy effective November 29, 1996. As a reason for the cancellation, the notice stated:

> At the time of issuing this Notice of Cancellation, Jefferson . . . hereby notifies you that it is asserting that [the policy] is void from inception because of fraud by the insured. You are hereby notified that Jefferson . . . is filing a declaratory judgment action . . . against the insured seeking a declaration of its rights under the policy and asserting that [the policy] is void from its inception for fraud. By cancelling this policy, Jefferson . . . does not in any way concede that this policy was operating as written from its effective date of December 05, 1995, to the date of cancellation, and specifically reserves the right to litigate that issue in the above-referenced Declaratory judgment action.

The appellants contend that, by giving this cancellation notice, Jefferson declared the policy void from its inception and cancelled the policy retroactively from its December 5, 1995 effective date. Since the accident at issue occurred on July 21, 1996, they argue that no

uncertainty remained to be resolved by the declaratory judgment action and that the trial court erred by not dismissing the action.

To the contrary, the cancellation notice shows that Jefferson cancelled the policy, not retroactively from its December 5, 1995 effective date, but prospectively as of November 29, 1996. Moreover, a reading of all the relevant portions of the cancellation notice shows that Jefferson did not unilaterally declare the policy void from its inception for fraud, but merely notified the insured that it was litigating this issue in the declaratory judgment action. Under these circumstances, an actual controversy as to coverage remained, and the trial court correctly denied the motion to dismiss. *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16 (413 SE2d 450) (1992).

2. The trial court also correctly ruled that the tow truck involved in the accident was not listed as an insured vehicle under the policy and was never covered by the policy.

The facts related to this issue show that the tow truck involved in the accident was a 1996 International truck with vehicle identification number 1HTSCAAM8TH346393. It is undisputed that this truck was not listed as a covered vehicle under the policy, was not added to the policy by endorsement, nor was any premium ever charged for this truck. Nevertheless, the appellants claim that a factual issue exists as to whether the truck was covered by the policy on the accident date because an insurance agency, Hamby & Aloisio (Hamby), acting on behalf of the insured, sent a written policy change request to Southern Insurance Underwriters (SIU), an insurance agency with binding authority for Jefferson, requesting that the tow truck at issue be added to the policy by endorsement effective February 23, 1996. This was approximately one month prior to the date that the insured leased the tow truck on March 26, 1996. Jefferson contended that no such request was made until after the July 21 accident date.

Despite this request, no endorsement or premium charge was ever issued adding the tow truck to the policy. The record shows that, prior to the accident date, Hamby sent numerous requests to SIU on behalf of the insured asking that various vehicles be added or deleted from the policy. Endorsements were issued on some of these requests with addition or deletion of premiums, but no immediate action was taken on others. The record also shows that, even though the tow truck had not been added to the policy by endorsement nor had any premium been charged, Hamby prepared a certificate of insurance for a lienholder bank showing the truck was insured under the Jefferson policy and sent a copy of this certificate to SIU in March 1996. The certificate of insurance contained the following notice: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or

alter the coverage afforded by the policies below." Contrary to the assertion in the dissent, there is no evidence that Jefferson issued an "insurance verification" showing coverage under its policy on the tow truck. The "insurance verification" referred to by the dissent is a document prepared by Coast to Coast Leasing Corporation, a company involved in the insured's lease of the tow truck. This document states under the heading "insurance information" that the leased truck is insured by Jefferson and states that the insurance agent is Hamby. Hamby, which issued the certificate of insurance on the truck, was the insured's agent, not Jefferson's agent, and had no authority to bind Jefferson to a contract of insurance.

In fact, the evidence shows that the insured was aware the truck at issue had not been added to the policy pursuant to the February 23 request. On July 22, 1996, the day after the July 21 accident, the insured asked Hamby if it had received a fax sent by the insured on July 19 asking that the truck at issue be added to the policy. Pursuant to that contact, Hamby sent another policy change request to SIU on July 22, 1996, requesting that the truck be added to the policy effective July 19, 1996. Hamby later sent SIU a letter on September 26, 1996, noting that several change requests were pending, including the one requesting that the tow truck at issue be added effective February 23, 1996, and asked to be advised on the status of the requests.

None of the above evidence creates a factual question on the issue of coverage. At best, this is evidence that prior to the accident Jefferson had knowledge through its agent, SIU, that the insured, through Hamby, requested that the truck be added to the policy and that Hamby, acting as the insured's agent, issued a certificate of insurance showing the truck was covered. Even if Jefferson had knowledge of these facts through its agent, this is not sufficient to support a claim that a contract of insurance was created covering the truck.

An application for insurance creates no binding contract of insurance until the insurer manifests its acceptance. *Protective Life Ins. Co. v. Robinson*, 193 Ga. App. 316, 317 (387 SE2d 603) (1989); *Seibels, Bruce & Co. v. H. H. Burnet & Co.*, 154 Ga. App. 577, 579 (269 SE2d 40) (1980). Neither an insurer's silence in response to an application, nor its delay in passing upon an application has the effect of creating a contract of insurance, even when the insured has forgone seeking other insurance. *Robinson*, 193 Ga. App. at 318; *Cohran v. Liberty Mut. Ins. Co.*, 258 Ga. 341 (368 SE2d 751) (1988).

In essence, the appellants are claiming that, because Jefferson knew about the coverage request and the insurance certificate issued by Hamby, it either waived defenses to coverage or is estopped from denying coverage. Although waiver or estoppel has been applied to

establish coverage in some situations where the insurer knew certain facts about the insured or the claim and was deemed to have accepted the risk, neither doctrine has ever been applied "to create a liability not created by the contract and never assumed by the insurer under the terms of the policy." (Citations and punctuation omitted.) *Sandner, Inc. v. Centennial Ins. Co.*, 189 Ga. App. 277, 280 (1) (375 SE2d 611) (1988), rev'd in part on other grounds, 259 Ga. 317 (380 SE2d 704) (1989); *American Resources Ins. Co. v. Conner*, 209 Ga. App. 885, 887 (434 SE2d 737) (1993); compare *Corp. of the Royal Exchange Assurance &c. v. Franklin*, 158 Ga. 644, 647-649 (124 SE 172) (1924) (insurer bound by waiver or estoppel where insurer or its authorized agent consents to change in policy and promises to make the necessary endorsement to the policy). Even if SIU had authority to bind Jefferson to a contract of insurance, it never did so. Moreover, neither SIU nor Jefferson did or said anything that could be construed as accepting the truck as covered under the policy or that induced the insured to believe the truck was covered. Compare *Sutker v. Pennsylvania Ins. Co.*, 115 Ga. App. 648, 653 (155 SE2d 694) (1967) (failure to effect insurance pursuant to promise to modify policy); *Seabrook v. Underwriters Agency*, 43 Ga. 583, 586-587 (1871) (conduct which induced belief there was coverage). Accordingly, no coverage was created by waiver or estoppel.

The trial court also correctly held that the truck at issue was not covered under the after-acquired vehicle clause of the policy, which provided in relevant part that: "[I]f symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an 'auto' you acquire will be a covered 'auto' for that coverage only if: a. We already cover all 'autos' that you own for that coverage . . . and b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage." The declarations page of the policy shows symbol 7 next to the applicable coverage provided under the policy. It follows that a vehicle acquired by the insured after the inception of the policy will be deemed insured for that coverage if all vehicles owned by the insured are already insured under the policy for that coverage, and within 30 days after the vehicle is acquired, the insured tells the insurer that he wants the vehicle to be insured under the policy for that coverage.

The record establishes that LaCosta Recovery Services, Inc., the named insured on the policy at issue, was not a corporate entity, but was actually one of several trade names under which DeFranks operated his towing business. DeFranks also operated under the trade name of Official Towing of Atlanta, Inc. Official Towing was the named insured on a second Jefferson policy which provided coverage at different rates for other tow trucks owned by DeFranks. As the trial court concluded, DeFranks, operating under the trade names, was the actual insured who owned vehicles insured under coverage

provided by the policy at issue and owned other vehicles insured under coverage provided by a separate policy. *Southern Guaranty Ins. Co. v. Premier Ins. Co.*, 219 Ga. App. 413, 414 (465 SE2d 521) (1995). Thus, he could not satisfy the requirement for application of the after-acquired vehicle clause that all the vehicles he owned were already insured under the policy at issue for that coverage.

The trial court correctly granted summary judgment to Jefferson on the basis that the tow truck at issue was not covered under the policy.

*Judgment affirmed. Johnson, P. J., Ruffin and Ellington, JJ., concur. Eldridge, Barnes and Miller, JJ., dissent.*

ELDRIDGE, Judge, dissenting.

Jefferson Insurance Company of New York brought a declaratory judgment action and a bill in the nature of an interpleader against its insured, C. (Carmen) T. DeFranks d/b/a LaCosta Recovery Services, Inc. and others, to void ab initio its commercial line insurance policy for fraud, covering motor vehicles, because Jefferson averred that the insured had given the business address of a store, Fortner's Discount Center, near rural Loganville, Walton County, Georgia, instead of the true business address in metropolitan Atlanta in order to get lower risk rates; was not a corporation as was represented; concealed that Jefferson also insured Official Towing, another trade name; concealed that the business was also engaged in the repossession of motor vehicles, which would increase its rates; and the tow truck was not covered under the LaCosta policy of insurance. Such inceptive fraud was so material to the insurance contract, because it constituted a fundamental basis for the establishment of the insurance risks for underwriting purposes; however, Jefferson cancelled the policy prior to instituting the declaratory judgment action. Thus, Jefferson's action in cancelling the policy fixed everyone's rights as of that date, and there existed no uncertainty of future course of conduct for a declaratory judgment action; thus, the action was properly pending only as a bill in the nature of an interpleader. Further, third party interests in the mandatory motor vehicle insurance coverage had already attached so that the policy could be cancelled only prospectively.

LaCosta Recovery Services, Inc. is a fictional trade name and is not a corporation; this name was used by DeFranks as one of many trade names, i.e., Official Towing of Atlanta and Atlanta Towing, that he used in the operation of a wrecker/towing business. DeFranks operated all of his wrecker/towing businesses, but as different named entities, from a single office located at 1632 Crescent Center Boulevard, Tucker, DeKalb County, Georgia, as a single business, using trucks and drivers interchangeably between these different

names. There is only a store at 136 C. S. Floyd Road, Loganville, Walton County, used as the address for the insurance policy application at issue; however, DeFranks never conducted or garaged any insured trucks there. When DeFranks obtained the first Jefferson policy covering Official Towing, DeFranks used the business address of 2160 Huntington Drive, Loganville, Walton County, which was not a place of business or a place where his vehicles were garaged.

Jefferson rated the risk and premium on its policies of insurance based upon the county of a business's operation; therefore, a business in Walton County would have different lower risk and premiums than the same business located in Fulton/DeKalb County. When Southern Insurance Underwriters discovered that 2160 Huntington Drive, Loganville, was a vacant lot, it required that Official Towing be rated at the correct Fulton/DeKalb rates.

Then, on December 5, 1995, DeFranks obtained coverage from Jefferson in policy no. JCV772121 for the trade name LaCosta Recovery Services, Inc. using the address 136 C. S. Floyd Road, Loganville, as the garaging location, but did not list the tow truck at issue as a covered vehicle. In both the LaCosta and Official Towing applications, DeFranks on specific inquiry denied that he was engaged in repossession work under either trade name, because repossession created a higher underwriting insurance risk with higher premiums.

In February 1996, DeFranks, acting as Official Towing, transferred the wrecker in question along with others to himself as LaCosta, which removed the vehicles from a different Jefferson policy. This lowered his insurance rates, since this trade name was listed as located in Walton County. Further, on February 23, 1996, DeFranks notified Jefferson that he wanted the white 1996 International S1600 tow truck, vehicle identification number IHT-SCAAM8TH346393, added to the LaCosta policy. However, LaCosta did not execute a lease for this vehicle from Horton Truck & Equipment Company/Coast to Coast Leasing Corporation until March 26, 1996. Moreover, Jefferson on March 22, 1996, issued an insurance verification for this vehicle to Coast to Coast Leasing for this tow truck with coverage under this LaCosta policy number by Jefferson. The evidence in the record creates a material issue of fact that the truck in question was added to the LaCosta coverage prior to the occurrence, creating a jury question. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

On July 21, 1996, at Snow & Red's Tire Service, at 2387 Bankhead Highway, Atlanta, Georgia, Alray Goolsby, a LaCosta employee, while within the scope of his employment for DeFranks, lost control of his tow truck and struck a vehicle that in turn struck Timothy Johnson, husband of Patsy Johnson, David M. Wilder, the

son of David and Ella Wilder, Festus Watts, and Anthony Jones, injuring them.

On October 25, 1996, Jefferson cancelled the LaCosta policy no. JCV772121 retroactively effective to December 5, 1995, because the policy was void from the inception for fraud. The cancellation notice stated: "By cancelling this policy, Jefferson Insurance Company of New York does not in any way concede that this policy was operating as written from its effective date of December 05, 1995, to the date of cancellation, and specifically reserves the right to litigate that issue in the above-referenced Declaratory judgment action."

On October 11, 1996, Jefferson filed this declaratory judgment action against the insured and all who had an interest in the coverage. The parties filed cross-motions for summary judgment, and on December 9, 1999, the trial court granted Jefferson's and denied the defendants' motions.[1]

1. The defendants contend that the trial court erred in granting summary judgment to Jefferson, because there were fact issues as to the fraud being material.

The defendants contend that there is no evidence that LaCosta made material misrepresentations in the policy application and that questions as to what constitutes material misrepresentations of fact are for a jury to decide.

> In cases where the application for insurance is attached to and becomes a part of the policy, in order to avoid the policy for a misrepresentation of the applicant made in the application, the insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk. OCGA § 33-24-7 (b). This is true although the applicant may have acted in good faith, not knowing that a representation is untrue. A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance. . . . While ordinarily the question as to the materiality of misrepresentations is for the jury, where the evidence, as [in this case], excludes every other reasonable inference except that they were material, no issue is presented on that point for consideration. . . . If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and

---

[1] Notice of appeal was filed on January 7, 2000, in the Superior Court of Fulton County. This case was docketed in the Court of Appeals of Georgia on March 19, 2001.

adhere to it. Otherwise, he can not avoid or rescind such contract.

(Citations and punctuation omitted.) *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga. App. 853, 854-855 (386 SE2d 725) (1989); see also *Morris v. State Farm &c. Ins. Co.*, 143 Ga. App. 617, 618 (1) (239 SE2d 187) (1977); see generally *Fla. Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111 (503 SE2d 371) (1998). The evidence of material fraud is plain, palpable, and undisputed. Thus, the policy was properly voided for fraud. Defendants failed to create a material issue of fact as to material fraud in the application by DeFranks.

2. The defendants contend that the trial court erred because the policy could be voided only prospectively, not retroactively, and that there was no issue for declaratory relief because Jefferson cancelled the policy prior to suit.

(a) Although the policy is void for material fraud in the application, the insurance policy, providing mandatory motor vehicle liability coverage, can be cancelled only prospectively as a matter of Georgia public policy, because injured third parties acquired an interest in the mandatory motor vehicle coverage after the occurrence and prior to the cancellation. Although *Pearce v. Southern Guaranty Ins. Co.*, 246 Ga. 33 (268 SE2d 623) (1980), was decided under the compulsory coverage of no-fault motor vehicle insurance, since repealed, no-fault insurance was replaced by other mandatory minimum motor vehicle liability coverage. Thus, as a matter of public policy, "an automobile insurance policy providing basic third party liability insurance and basic personal injury protection benefits . . . issued pursuant to Georgia law cannot be voided retrospectively under [OCGA § 33-24-7]." Id. at 39; see also OCGA §§ 33-34-4; 40-5-71; *Ga. Farm &c. Ins. Co. v. Phillips*, 251 Ga. 244, 246 (304 SE2d 725) (1983); *Sentry Indem. Co. v. Sharif*, 248 Ga. 395, 397 (282 SE2d 907) (1981). Even a binder for motor vehicle liability coverage cannot be voided for fraud retroactively for the same reasons. *Sentry Indem. Co. v. Sharif*, supra at 396-397. Coverage in excess of the mandatory minimum can be voided only prospectively for fraud. *Ga. Farm &c. Ins. Co. v. Phillips*, supra at 245. Such public policy limitations extend to void or narrow coverage exclusions under the written terms of mandatory motor vehicle liability insurance policies, which further demonstrates such overriding public policy in this area.

The public policy considerations relating to . . . exclusion provisions in automobile liability insurance policies stem from the legislature's enactment of the mandatory insurance statute. The purpose of the statute was to provide protection in the form of insurance. We have held that compulsory

insurance is required for the protection of the innocent victims of the negligent members of the motoring public. We have also held that the legislature intended that Georgia's compulsory insurance law protected the insured from unfair exposure to unanticipated liability. . . . [I]n view of our overriding policy of complete liability coverage for the protection of the public and the insured, if the exclusion were broader than the tort immunity of this state, the exclusion would be against public policy.

(Citations and punctuation omitted.) *Stepho v. Allstate Ins. Co.*, 259 Ga. 475, 476 (1) (383 SE2d 887) (1989). See also *Govt. Employees Ins. Co. v. Dickey*, 255 Ga. 661, 662 (340 SE2d 595) (1986); *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 341 (1) (329 SE2d 136) (1985); *Federated Mut. Ins. Co. v. Dunton*, 213 Ga. App. 148, 149-150 (1) (444 SE2d 123) (1994); *Jones v. Wortham*, 201 Ga. App. 668, 670 (411 SE2d 716) (1991). Where there are policy exclusions as to motor vehicle liability coverage, such exclusions may limit liability in excess of the mandatory minimum coverage. See *Ga. Farm &c. Ins. Co. v. Burch*, 222 Ga. App. 749, 750 (476 SE2d 62) (1996). Thus, the coverage in this case could not be retroactively voided by the terms of the contract or by fraud, only prospectively voided.

(b) However, Jefferson's rights and liabilities as to the defendants became fixed on October 25, 1996, when it issued the policy termination notice for fraud prior to filing its declaratory judgment action. The facts of this case are unlike *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992), where coverage was neither declined payment nor voided the policy by the insurer prior to the commencement of a declaratory judgment action. Jefferson could not void the policy and at the same time reserve rights under the policy to contest the policy; such would be to take inconsistent positions. Jefferson's action of voiding the policy was an affirmative act fixing its and all interested parties' rights and liabilities under the policy.

"Thus, when a claim for insurance has been made, and a legitimate question exists as to the propriety of denying coverage, the insurance company may file a declaratory judgment action before denying the claim. It is not necessary for the insurance company to wait for the insured to file a lawsuit against it." *Atlanta Cas. Co. v. Fountain*, supra at 17-18. Declaratory judgment actions are appropriate to resolve and afford relief from uncertainty and insecurity as to actions not yet taken with respect to rights, status, and other legal relations before liability becomes fixed by act or omission. OCGA § 9-4-1; *Burgess v. Burgess*, 210 Ga. 380, 382-383 (2) (80 SE2d 280) (1954); see also *Venable v. Dallas*, 212 Ga. 595 (94 SE2d 416) (1956). When a party has already acted, fixing rights, and seeks confirma-

tion of the correctness of such action, declaratory judgment is not an appropriate remedy, because there no longer exists uncertainty of action. *Norfolk &c. Ins. Co. v. Jones*, 124 Ga. App. 761, 763-764 (2) (186 SE2d 119) (1971). Thus, "declaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act — as where an insurance company has already denied a claim." *Atlanta Cas. Co. v. Fountain*, supra at 18; see also *Mayor &c. of Athens v. Gerdine*, 202 Ga. 197 (1) (42 SE2d 567) (1947); *Norfolk &c. Ins. Co. v. Jones*, supra at 764. Declaratory judgment cannot be employed simply to test the viability of its defenses to an action that has already vested. *Chattahoochee Bancorp v. Roberts*, 203 Ga. App. 405, 406 (416 SE2d 875) (1992); *Allstate Ins. Co. v. Shuman*, 163 Ga. App. 313, 316 (4) (293 SE2d 868) (1982). Thus, the trial court should have denied the motion for summary judgment for a declaratory judgment and dismissed the declaratory judgment action.

(c) Also, Jefferson brought this action as a bill in the nature of an interpleader and paid into court the premiums paid to determine what refund of the unearned premiums that it owed DeFranks. OCGA § 9-11-22; *Algernon Blair, Inc. v. Trust Co. of Ga. Bank of DeKalb*, 224 Ga. 118, 120-121 (160 SE2d 395) (1968). The trial court failed to determine what if any of the insurance premium should be refunded to DeFranks as unearned by Jefferson.

Where there exist multiple competing claims to liability insurance coverage proceeds, an insurer may protect itself by an interpleader action to determine the priorities of claims or liens to such coverage. See *Holland v. State Farm &c. Ins. Co.*, 244 Ga. App. 583 (536 SE2d 270) (2000); *Holland v. State Farm &c. Ins. Co.*, 236 Ga. App. 832 (513 SE2d 48) (1999).

Under OCGA § 9-12-90, where there has been a common disaster or occurrence, as in this case with multiple parties who have personal injuries, judgment liens stand in equal rank or priority if the actions were filed within 12 months of the occurrence giving rise to the tort action. Jefferson has limited coverage but has multiple claims for personal injury and a substantial judgment. Therefore, interpleader of the coverage is appropriate for judicial determination of the priorities of the claims on remand, if Jefferson chooses to pay the coverage into the trial court.

I am authorized to state that Judge Barnes and Judge Miller join in this dissent.

DECIDED OCTOBER 19, 2001 —
RECONSIDERATION DENIED NOVEMBER 27, 2001 —

*Wilson & Epstein, Norman S. Epstein, Holland & Knight, Sara L. Doyle, Jonathan P. Sexton,* for appellants.

*Drew, Eckl & Farnham, James M. Poe, James L. Creasy III, Catherine E. Diamond,* for appellee.