**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2019**

# In the Court of Appeals of Georgia

A19A0497. GRANGE MUTUAL CASUALTY COMPANY v.
BENNETT et al.

COOMER, Judge.

Pursuant to our grant of a discretionary appeal, Grange Mutual Casualty Company ("Insurer") appeals the Hall County Superior Court's decision to affirm the State Board of Workers' Compensation's ("Board") ruling that: (1) the Insurer did not sufficiently raise a void policy defense before the administrative law judge, thus waiving the defense; and (2) on the merits, the insurance policy was not void. It also argues the superior court applied the incorrect standard of review in its analysis of the Board's findings. For the reasons that follow, we affirm.

> In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division. The findings of the State Board of Workers'

Compensation, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board.

*Laurens County Bd. of Ed. v. Dewberry*, 296 Ga. App. 204, 205-06 (674 SE2d 73) (2009) (footnotes omitted).

So viewed, the record shows that McCormick Enterprises ("Employer") was a small construction company primarily involved in greenhouse repair and maintenance. In 2014, the Employer had workers' compensation insurance through Liberty Mutual. When the Employer's insurance policy came up for renewal, the Employer contacted its insurance agent and asked if she could find cheaper insurance with the same coverage. The agent procured a quote from the Insurer.

In completing the insurance application, the agent pulled the Employer's business information from the previous Liberty Mutual insurance policy. The Liberty Mutual insurance application indicated that the Employer performed work outside the state of Georgia. However, on the Insurer's application, the agent indicated that the Employer did not perform work outside of Georgia. The agent testified at the hearing before the administrative law judge ("ALJ") that she did not know that the Employer performed work outside of Georgia, and that she only reviewed the Liberty Mutual

2

policy – but not the Liberty Mutual application – in completing the Insurer's application. The agent also classified the Employer's company as janitorial work on the Insurer's application based on the Liberty Mutual policy. She also said that she sent the completed application to the Employer for review, and that the Employer signed and returned the application. However, the owner of Employer testified that the agent emailed him a blank application to sign and that he did not review or approve the section indicating that his employees did not travel out of state. Ultimately, the application submitted to the Insurer indicated that the Employer provided janitorial services, the employees did not travel out of state, and that the employees did not perform any work above 15 feet.

After the Insurer issued its policy to the Employer, an employee had an injury while working in Louisiana on August 8, 2014. Employer reported the injury to the Insurer. The Insurer eventually denied the claim because the injury occurred outside of Georgia. Employer's owner testified that he then told the agent that she needed to fix that issue with the insurance policy, because 85% of the Employer's work was outside of Georgia. The agent denied having that conversation and testified that she did not know the injury occurred out of state.

After the August 2014 claim, the Insurer conducted an investigation of the Employer's business operations and its workers' compensation policy. An underwriter for the Insurer testified that the Insurer would not have issued the policy if the application correctly indicated that the Employer operated in 30 states, because the Insurer was not licensed to issue policies in all those states. The underwriter also testified that the Insurer would not have issued the policy if it had known that the Employer's employees were cleaning windows at heights over 15 feet.

During its investigation after the August 2014 claim, the Insurer asked its general counsel and outside counsel whether the Employer's application was so inaccurate that it could immediately void or rescind the policy. The Insurer determined that it could not void the policy, so it sent a cancellation notice on December 18, 2014, with an effective cancellation date of March 8, 2015. The Insurer told the Employer that it was canceling the policy due to the Employer's out-of-state operations, and gave the Employer approximately 90 days to find alternative coverage.

On March 7, 2015, Adam Bennett (the "Employee") was working for the Employer. He was hired for a snow-removal job in New York. The Employee was traveling to the job as a passenger in an Employer-owned truck. While en route, the

truck was involved in an automobile accident. The Employee suffered extensive injuries to his skull and back. He then filed this worker's compensation claim.

Following the ALJ hearing, Insurer submitted a brief, in which it argued, among other things, that: (1) its policy did not cover out-of-state work injuries; (2) Employer's owner was aware of the terms of the Insurer's policy yet did not advise the Insurer of his need for multi-state coverage; and (3) the Insurer would not have issued the policy if it had received an accurate description of the Employer's business operations.

The ALJ found that the Insurer's policy covered the Employee's injury. Specifically, it found that the Insurer, in order to limit coverage to only accidents in Georgia, was required to amend or endorse the policy with that limitation. When the Insurer listed "Georgia" on the policy, the Insurer was agreeing to pay workers' compensation claims under the laws of Georgia. And, under Georgia law, the Employee's out-of-state injuries were compensable. The ALJ declined to resolve the conflicts in the testimony between the Employer and the Agent regarding the insurance application process because the main issue for resolution was whether the policy covered the Employee

on March 7, 2015. That outcome was determined by the Insurer's action on December 18, 2017 without regard to the parties' actions during the application process.

The Insurer then appealed the ALJ's decision to the Board. In its brief to the Board, the Insurer argued, among other things, that the insurance policy was void under OCGA § 33-24-7 due to the Employer's and the Agent's false representations on the application. The Board upheld the ALJ's finding that the Insurer's policy covered the Employee's injury. Using the same logic employed by the ALJ, the Board also found that it did not need to address the Insurer's argument that the policy was void under OCGA § 33-24-7 in order to resolve the case.

The Insurer appealed to the superior court, and the superior court remanded to the Board to address whether the policy was void under OCGA § 33-24-7. On remand, the Board held that the Insurer waived any defense under OCGA § 33-24-7 because the Insurer did not raise the issue before the ALJ. Alternatively, the Board ruled that the Insurer failed to prove the merits of the void policy defense. The Board found that the Insurer's contention, that it would not have issued a multi-state policy because it was not licensed in all the other states, was not credible or supported by the evidence in the case, especially given that the policy did cover out-of-state injuries under Georgia law. The Board also found that the Employer's misrepresentations

6

were inadvertent, non-material, and insufficient to void the policy under OCGA § 33-24-7. Upon return of the case, the superior court affirmed the Board's order, and this appeal followed.

The Insurer's arguments in its brief to this Court focus on its void policy claim under OCGA § 33-24-7. The Insurer argues that it sufficiently raised the void policy defense at the ALJ hearing, that the Board misapplied the legal standard for determining whether the insurance policy was void under OCGA § 33-24-7, and that the superior court erred by applying the any evidence standard to its review of the Board's findings, rather than conducting a de novo review. We do not reach the merits of the Insurer's arguments because we hold that on the facts of this case, the Insurer waived the defense that fraud voided the policy *ab initio*.

As a general rule, "[i]f a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract." *Gibson v. Alford*, 161 Ga. 672 (5) (132 SE 442) (1926). *See also Jones v. Cartee*, 227 Ga. App. 401, 402-03 (1) (489 SE2d 141) (1997) (accord).

"Under Georgia law, an insurer seeking to rescind a policy must make an announcement of the intent to rescind the contract in a timely fashion, as soon as the

facts supporting the claim for rescission are discovered." *American Safety Indemnity Com. v. Sto Corp.*, 342 Ga. App. 263, 271 (4) (802 SE2d 448) (2017) (citation and punctuation omitted). Additionally, "after announcing its intent, the insurer must adhere to the intent to rescind and may waive any defense of rescission by failing to do so." *Id*. (citation omitted). If an insurer, instead of rescission, issues a denial of coverage and cancels the policy with a future effective date, as the Insurer did in this case, the right and defense of rescission is waived as a matter of law. *Id*. at 272. *See also Florida Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 113-14 (1) (503 SE2d 371) (1998) ("One significant reason for this rule in insurance cases is that leading the insured to believe the validity of the policy is not questioned lulls the insured into not purchasing other insurance and thus subjects the insured's property to continuing non-coverage." footnote omitted)).

Here, the Insurer waived a void policy defense when, upon discovery of the inaccurate information on the application, it informed the Employer that its coverage would continue for 90 days. If the Insurer believed that the policy was void based on fraud, it should have immediately rescinded it.

The facts of this case resemble those in *Loeb v. Nationwide Mut. Fire Ins. Co.*, 162 Ga. App. 561 (292 SE2d 409) (1982). In *Loeb*, the defendant-insurance company

8

cancelled the plaintiff's insurance policy when it learned that the plaintiff made a material misrepresentation on his insurance application. *Id*. at 561-562. Rather than returning the premium and rescinding the policy, however, the insurer cancelled the policy, effective one month from the notice of cancellation, and retained the portion of the premium covering the period from the policy's effective date until the date cancellation became final. *Id*. at 562. The plaintiff suffered a loss after the insurer sent the notice of cancellation, but before the cancellation became effective. *Id*. The defendant denied the claim based on the insured's misrepresentation. *Id*. This Court, however, held that because the insurer cancelled the policy and retained the premium, the policy was not void from its inception, and the insurer could not rely on the insured's misrepresentation to deny the claim. *Id.* at 563. In so holding, this Court stated:

> In its letter of notice of termination, [the insurer] advised [the insured] that notice was necessary not only to cancel the coverage but to advise [the insured] to obtain other protection because continuous protection was important. It is clear therefore that [the insurer] did not consider the policy void from December 1 [the effective date] but considered it in effect until June 9, 1979 [the cancellation date].

*Id*. at 563.

We see no distinction between *Loeb* and the case *sub judice*. Here, the Insurer became aware of the Employer's business operations outside of Georgia in August 2014, when one of the Employer's workers filed a claim for an injury that occurred in Louisiana. The Insurer's legal department, along with an outside law firm, launched an investigation into whether the policy was rescindable due to alleged inaccuracies in the insurance application. Both the Insurer and the law firm determined that the policy could not be voided based on the inaccuracies. Consequently, the Insurer notified the Employer it was cancelling the policy effective March 8, 2015. Therefore, the policy remained in full force and effect until that date.

The Insurer relies on *American Resources Ins. Co. v. Conner*, 209 Ga. App. 885, 888 (434 SE2d 737) (1993) to argue that it did not waive its void policy defense when it prospectively cancelled the policy instead of immediately rescinding it once it became aware of the misrepresentations in the insurance application. *American Resources Ins. Co.* is distinguishable and does not require a different result here. In that case, this Court rejected the insured's argument that the

> [insurance company] waived its right to avoid coverage when, instead
> of rescinding the [insured's] policy and tendering back the premium
> upon learning of the purported subterfuge, it canceled the [insured's]
> policy prospectively. Because only the endorsements, and not the entire

10

[insured's] policy, were involved in the subterfuge, and no additional premium had been paid for the endorsements, the principle involved in *Loeb* is inapplicable here. No basis existed for rescinding the entire policy. [Insurance company] has not sought to avoid paying claims made by legitimate [insured] employees during the period the [insured's] policy was in effect.

*American Resources Ins. Co.*, 209 Ga. App. at 887, 888 (3) (citation omitted).

Here, the Insurer alleges that the fraudulent misrepresentations by the Employer and the Agent undermine the validity of the entire policy, not just a portion of it. Despite its contention now that the policy was void *ab initio*, the Insurer told the Employer that it would continue to honor the whole policy for a period of 90 days. Because it extended coverage for 90 days, the Insurer therefore remained obligated to pay any valid claims arising under the policy terms within that time period. Accordingly, the *Loeb* principle applies, and the Insurer cannot avoid coverage based on a void policy defense.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*

11